## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FEDERAL EDUCATION ASSOCIATION, Inc.** | : | |
| **(a unified state affiliate of the National** | : | |
| **Education Association),** | : | |
| 1201 Sixteenth Street NW | : | |
| Suite 117 | : | |
| Washington, D.C., 20036 | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **DONALD H. RUMSFELD, SECRETARY,** | : | **COMPLAINT FOR** |
| **UNITED STATES DEPARTMENT** | : | **DECLARATORY AND** |
| **OF DEFENSE,** | : | **INJUNCTIVE RELEF** |
| The Pentagon | : | |
| Washington, D.C., 20301-1000, | : | |
| | : | |
| and | : | |
| | : | |
| **LINDA M. SPRINGER, DIRECTOR,** | : | |
| **OFFICE OF PERSONNEL MANAGEMENT**, | : | |
| 1900 E Street, NW | : | |
| Washington, D.C., 20415-1000, | : | |
| | : | |
| defendants. | : | |

## Introduction

1.    This action is brought by a subordinate body of the nation's largest professional association and labor organization in order to preserve the collective bargaining rights it has maintained with the Department of Defense for decades, during times of both war and peace.  The Federal Education Association alleges herein that the defendants have illegally included the educators it represents in the National Security

Personnel System, and by doing so stripped them of the collective bargaining and other rights to which they are entitled under the Federal Service Labor Management Relations Statute and under separate personnel laws governing the employment of educators. The FEA also alleges that the defendants have exceeded their authority by including DOD domestic dependents school educators in the NSPS human resources management system intended for civilian employees whose responsibilities involve national security work.

## Jurisdiction, Venue and Parties

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201 and the Administrative Procedures Act, 5 U.S.C. §§ 702 *et seq.*

3.     Venue is proper within this judicial district pursuant to 28 U.S.C. §1391(e).

4.     The plaintiff Federal Education Association (FEA) is a not-for-profit corporation that is a "unified state affiliate" of the National Education Association. The FEA's membership is comprised of teachers, guidance counselors, school nurses, librarians, educational technologists and other educational support personnel employed by the United States Department of Defense at or near military bases in the United States and overseas. As stated in its Constitution, among the FEA's goals and beliefs are the promotion of high quality education in federal schools overseas and in the United States, the improvement of working conditions of its members, the advancement of educators' rights, and the promotion of equitable employment benefits and policies for educators.

The FEA has been certified by the Federal Labor Relations Authority as the exclusive collective bargaining representative of most the educators and other educational support personnel employed by DOD in its dependents schools in the continental United States and in most overseas locations. The FEA brings this action on its own behalf and on behalf of its members employed by DOD.

5.      The defendant Donald H. Rumsfeld is the Secretary of the United States Department of Defense, the employer of FEA's members. The defendant Rumsfeld is being sued in his official capacity.

6.      The defendant Linda M. Springer is the Director of the United States Office of Personnel Management (OPM). The defendant Springer is being sued in her official capacity.

## Factual Allegations

7.      The Department of Defense Education Activity (DODEA) is a civilian agency within the Department of Defense. DODEA is organized into two separate school systems for the children of military service members. The Department of Defense Dependents Schools (DODDS) educates approximately 76,500 students in 154 elementary and secondary schools at or near military bases in 13 foreign countries. The Domestic Dependent Elementary and Secondary Schools (DDESS) educates

approximately 36,400 students in 70 schools on military bases in Alabama, Georgia,

Kentucky, New York, North Carolina, South Carolina, Guam and Puerto Rico.

8.     The Federal Education Association was originally organized as a

professional association of teachers in DODDS in 1956. The FEA was known as the

Overseas Education Association until 1995. The OEA began collective bargaining on

behalf of DODDS teachers in Europe in 1967 and on behalf of DODSS teachers in the

Pacific in 1969. It collectively bargained with DOD on behalf of teachers employed on

military bases in Japan, Okinawa, South Korea and the Republic of the Philippines

during the height of the Viet Nam War without any adverse impact on the ability of DOD

to prosecute the war from those bases.  The FEA currently represents a bargaining unit of

approximately 5,000 DODDS educators in eight countries, including Germany, Great

Britain, Japan and South Korea.  Its current collective bargaining agreement with

DODDS was negotiated in 1989, but has been amended at various times.

9.     The FEA and its predecessor, the OEA, have also collectively bargained on

behalf of educators and educational support personnel in various DDESS schools for over

20 years either directly or through subordinate educational associations. The FEA

currently collectively bargains on behalf of approximately 3,000 educators at all of

DDESS schools except for those in Puerto Rico. The FEA's 1999 collective bargaining

agreement with DDESS covering teachers and other professionals was renegotiated last

year, and the status of that successor agreement is in litigation on issues unrelated to this

4

lawsuit. The FEA also bargains for educational support personnel employed by the schools on six bases.

10.     In order to recruit and retain qualified educators in DOD dependents schools, Congress enacted personnel statutes that create separate personnel systems for overseas and domestic DOD school personnel. These statutes establish personnel practices for instructional personnel patterned after those usually encountered by the teaching profession rather than those which have been developed for the Federal service as a whole. These two statutes exempt DOD school personnel from civil service pay and classification laws.

11.     The Overseas Teachers Pay and Personnel Practices Act, 20 U.S.C. § 901 *et seq.* governs the employment of teachers and other professional education personnel in DODDS. It provides, *inter alia*, that notwithstanding other civil service laws, the Secretary shall issue regulations that govern the terms and conditions of employment for DODDS educators and fix the "basic compensation of teachers and teaching positions at rates equal to the average of the range of rates of basic compensation for similar positions . . . in urban school jurisdictions in the United States of 100,000 or more population." 20 U.S.C. §§ 902(a), 903(c).  In order to comply with the Overseas Teachers Pay and Personnel Practices Act, the Secretary conducts an annual survey of salaries in major public school districts in the United States and constructs salary schedules based on level

of education (BA, MA, etc), each of which has numerous salary steps based on years of

teaching experience, as is routine in public schools in the United States.

12.    The employment of teachers in DOD domestic schools was originally

governed by Section 6 of Pub. L. No. 81-874, enacted in 1950 and previously codified at

20 U.S.C. § 241. These "Section 6" schools were created on military bases in the south so

that military dependents would not have to attend segregated public schools in the

communities adjacent to the bases. As originally enacted, Section 6 stated that school

personnel "may be employed without regard to the civil service or classification laws."

13.    In 1965, Section 6 was amended by Pub. L. No. 89-77 to make the terms

and conditions of employment of domestic school personnel comparable to that of

instructional personnel in public schools. This amendment permitted the Secretary to

establish terms and conditions of employment for school personnel without regard to the

Classification Act, the Federal Employee Pay Act, and the Annual and Sick Leave Act

applicable to most other Federal employees. Employment practices were established to

reflect the practices which existed in the public schools, and salaries were set comparable

to the public schools districts which were adjacent to the military bases.

14.    The Supreme Court ruled in *Fort Stewart Schools v. Federal Labor

Relations Authority*, 495 U.S. 641 (1990), that because of the latitude granted to the

Secretary to set salaries in the domestic schools, the Fort Stewart Association of

6

Educators (a part of the Overseas Education Association) could collectively bargain over wages and monetary fringe benefits for educators in the Section 6 schools.

15.    Following that decision, the OEA bargained over the salary schedules for Section 6 educators at Fort Stewart and elsewhere.

16.    In 1994, Congress repealed 20 U.S.C. § 241. However, in Section 351 of the National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, Congress reauthorized the Secretary to continue to operate the schools on domestic military installations. 10 U.S.C. § 2164.  Section 351(a) authorized the Secretary to employ school personnel "without regard to the provisions of any other law relating to the number, classification or compensation of employees." In setting the compensation of school personnel, the Secretary is required to consider the compensation of comparable employees in the public schools districts adjacent to the military installation, in the capital of the state in which the installation is located, and in not more than three other school districts in which the installation is located. 10 U.S.C. § 2164(e)(3)(A).

17.    Congress also ensured that domestic school personnel could continue to bargain over salary schedules. Section 351(c) of Pub. L. No. 103-337 states:

> SAVINGS PROVISION – Nothing in section 2164 of title 10, United States Code, as added by subsection (a) shall be construed as affecting the rights in existence on the date of the enactment of this Act of an employee of any school established under such section (or any other provision of law enacted before the date of enactment of this Act that established a similar school) to negotiate or bargain collectively with the Secretary with respect to wages, hours, and conditions of employment.

10 U.S.C.A. § 2164 note.

18.     Following the enactment of Pub. L. No. 103-337, the FEA continued to bargain over salary schedules for DDESS educators, using the salary rates of the public schools districts in the adjacent communities and elsewhere in the state as a basis. The FEA has also bargained for wages for the educational support personnel at the schools on six of the bases.

19.     Although the basic compensation of overseas educators is linked to the salary schedules in urban school districts by the Overseas Teachers Pay and Personnel Practices Act, the FEA has bargained for extra duty compensation for overseas teachers, such as those who coach after-school athletics or those who sponsor extracurricular activities.

20.     In 2003, the Secretary sought authority to exempt other DOD civilian employees from some of the pay and classification laws from which DOD school teachers were already exempt. In addition, the Secretary also sought to effectively exempt DOD civilian employees from the coverage of the Federal Service Labor Management Relations Statute so he would no longer have to collectively bargain with their unions. As explained by Secretary Rumsfeld in testimony to Congress, DOD ostensibly needed additional flexibility in personnel matters so that certain DOD civilian employees could be more fully integrated into national security operations:

> To deal with new threats we need military capabilities that are flexible, light and agile, so we can respond quickly and deal with surprise.
>
> The same is true of the men and women, and the systems in the Department of Defense that support them. They also need flexibility – so they can move money, shift people, design and buy new weapons more rapidly, and respond to the continuing changes in our security environment.
>
> Today, we do not have that kind of agility . . . DoD is bogged down in the bureaucratic processes of the industrial age – not the information age.
>
> The Department's civilian personnel system is a case in point. Consider a few examples:
>
> Today we have some 320,000 uniformed people performing non-military jobs. . . . More than two and one half times the number of troops that were on the ground in Iraq when Baghdad fell doing jobs that could and should be done by civilian personnel.  . . .
>
> The unwillingness to put civilians in the hundreds of thousands of jobs that do not need to be performed by uniformed personnel or by contractors puts a serious strain on our uniformed personnel and added cost to the taxpayers.

Testimony of Secretary Donald H. Rumsfeld before the Senate Governmental Affairs Committee, June 4, 2003.

21.    Congress granted the Secretary some of the personnel flexibility he sought when it enacted § 1101(a)(1) of the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, 117 Stat. 1621 (2003):

> Notwithstanding any other provision of this part, the Secretary may, in regulations prescribed jointly with the Director [of the Office of Personnel Management], establish, and from time to time adjust, a human resources management system for some or all of the organizational or functional units of the Department of Defense. The human resources

9

> management system established under authority of this section shall be
> referred to as the "National Security Personnel System."

5 U.S.C. § 9902(a).  As part of the National Security Personnel System (NSPS), the

Secretary and the Director were authorized to waive the provisions of Title 5 that pertain

to the pay, classification, performance evaluation and reductions-in-force of Federal

employees, and to establish an alternate "pay-for-performance evaluation system to better

link individual pay to performance." 5 U.S.C. § 9902(b)(5),(6).

22.     Congress mandated that the new National Security Personnel System

"ensure that employees may organize, [and] bargain collectively as provided for in this

chapter." 5 U.S.C. § 9902(b)(4).  The Secretary and the Director were authorized to

"establish and from time to time adjust a labor relations system for the Department of

Defense to address the unique role that the Department's civilian workforce plays in

supporting the Department's national security mission." 5 U.S.C. § 9902(m)(1).  The

Secretary was to determine which DOD bargaining units would be included in this new

"labor relations system" and which bargaining units would remain under the existing

labor relations system administered solely by the Federal Labor Relations Authority.

5 U.S.C. § 9902(m)(8).

23.     DOD developed a formal "requirements document" that was used as a

guide for developing the National Security Personnel System.  In this September 25,

2004 "requirements document," DOD stated that the NSPS was needed "to manage

strategically its civilian workforce based on a total force perspective" so that civilian employees could be substituted for military personnel: "Given this global war on terrorism, the role of DoD's civilian workforce is expanding to include more significant participation in combat support functions that will allow military personnel to focus on was fighting duties."

24.    On February 14, 2005 the Secretary and the Director of OPM proposed regulations to implement the NSPS. 70 Fed. Reg. 7552. The proposed NSPS included major changes in the way DOD civilian employees were compensated.  The traditional position classification system applicable to the Federal civilian workforce was to be abolished so that employees could be more easily assigned to different job responsibilities. The General Schedule pay schedules, which are pegged to position classification and which reward employees with higher pay steps based on longevity, were eliminated. The Secretary and the Director proposed to establish "pay bands" made up of a broad range of minimum and maximum pay rates. Pay raises within these bands would depend not on years of experience or longevity, but on the results of annual performance evaluations. The pay raises would, however, be limited by the amount of funds available in "pay pools" regardless of the quality of employees' performance.  The regulations also proposed to exclude DOD civilian employees from the coverage of OPM's reduction-in-force regulations applicable to the Federal civilian workforce as a whole. The proposed regulations would also authorize the Secretary to establish

"mandatory removal offenses" for disciplinary infractions that "have a direct and substantial adverse impact on the Department's national security mission."

25.     Subpart I of the proposed regulations created a new labor relations system that effectively eliminated collective bargaining over any matters of substance. Section 9901.903 of the proposed regulations specifically prohibited bargaining over pay. 70 Fed. Reg. 7595.

26.     In the justification for the proposed regulations, the Secretary and the Director explained that the objective of the NSPS they had designed was to grant the Secretary the flexibility he ostensibly needed to use the civilian workforce to fight evolving national security threats. They wrote:

> DoD civilians are unique in government: they are an integral part of an organization that has a military function. DoD civilians must complement and support the military around the world in every time zone, ever day. Just as new threats, new missions, new technology and new tactics are changing the work of the military, they are changing the work of our 700,000 civilians. To support the interests of the United States in today's national security environment . . . civilians must be an integrated, flexible and responsive part of the team.

> At best, the current personnel system . . . cannot adequately address the 21st century national security environment . . . [C]ivilians are being asked to assume new and different responsibilities, take more risk, and be more innovative, agile and accountable than ever before. . .

> . . . The Department sometimes uses military personnel or contractors when civilian employees could have and should have been the right answer. . . .

> . . .[T]he country's national security demands a highly responsive civilian workforce.

12

70 Fed. Reg. 7552-54.

27.     The justification accompanying the proposed regulations also stated that the new labor relations system eliminated the obligation to bargain over any matters of substance in order to "enabl[e] a swift response to ever-changing national security threats." The new labor relations system was ostensibly designed to "provide DoD with a workforce that is sufficiently agile and flexible to execute the current and future national security mission." 70 Fed. Reg. 7568. The Secretary and the Director explained that they curtailed DoD's responsibility to collectively bargain in order to allow DoD to more rapidly deploy civilian employees to fight national security threats:

> To carry out its national security mission, the Department must have the authority to take actions quickly when circumstances demand; it must be able to develop and rapidly deploy resources to confront threats in an ever-changing national security environment; and it must be able to act without unnecessary delay.

70 Fed. Reg. 7570.

28.     The Federal Education Association submitted comments in response to the proposed regulations. In these comments, the FEA objected to the inclusion of both the overseas and the domestic school educators in the proposed NSPS human resources management system because their pay and other terms and conditions of employment were covered by two separate personnel statutes, the Overseas Teachers Pay and Personnel Practices Act and 10 U.S.C. § 2164, neither of which were waived by 5 U.S.C.

13

§ 9902.  As the FEA explained, the provisions of these two statutes linked teachers' pay

to compensation schemes in comparable public school systems, which, because of the

vagaries in evaluating teacher performance, uniformly link pay advancement to years of

teaching experience.

29.    In its comments, the FEA also objected to the inclusion of both overseas

and domestic school personnel in the proposed NSPS labor relations system because their

responsibilities do not involve "national security" any more than does the work of the

teachers who teach the overwhelming majority of military dependents who attend public

schools.  The FEA explained that the rationale given for the flexibilities of the new labor

relations system were wholly inapplicable to school personnel.  "[T]eachers do not play

combat support roles in which they might be reassigned to perform duties of uniformed

personnel who are deployed."  The FEA also objected to the exclusion of pay from the

matters that were subject to collective bargaining.

30.    On November 1, 2005, the Secretary and the Director of OPM issued final

regulations establishing the NSPS. The Secretary and the Director reiterated that the

objective of the new NSPS was to enable civilian employees to be substituted for military

personnel in national security operations:

> Despite the professionalism and dedication of DoD civilian
> employees, the limitations imposed by the current personnel system often
> prevent managers from using civilian employees effectively. The
> Department sometimes uses military personnel or contractors when civilian
> employees could have and should have been the right answer. The current
> system limits opportunities for civilians at a time when the role of DoD's

civilian workforce is expanding to include more significant participation in Total Force effectiveness. NSPS will generate more opportunities for DoD civilians by easing the administrative burden routinely required by the current system and providing an incentive for managers to turn to them first when certain vital tasks need doing. This will free uniformed men and women to focus on matters unique to the military.

70 Fed. Reg. 66118.

31.    The Secretary and the Director attempted to justify the reduction in

collective bargaining rights as necessary in order to be able to substitute civilian

employees for military personnel:

Significant differences with many of the labor organizations remain over such issues as the scope of bargaining, implementing issuances that supersede conflicting provisions of collective bargaining agreements, the specificity of the regulations, the ability to grieve pay decisions, the use of behavior as part of performance evaluation and the use of performance in a reduction in force. These differences cannot be reconciled with the need for a contemporary and flexible system of human resources management as DoD seeks to transform the civilian part of the Total Force of military personnel, civilian employees, and DoD contractors. The current system limits opportunities for civilians at a time when the role of DoD's civilian workforce is expanding to include more significant participation in Total Force effectiveness. NSPS will generate more opportunities for DoD civilians by easing the administrative burden routinely required by the current system. It will provide an incentive for managers to (1) identify military positions that can be converted to civilian and (2) to turn to civilians first when certain vital tasks need doing. This will free military men and women to focus on matters unique to the military, while greatly increasing the role of the Department's civilian employees. The need for a flexible and contemporary system to support the Department's national security mission is nothing less than an absolute requirement and it must become the foundation of DoD civilian human resources management.

15

70 Fed. Reg. 66123. The Secretary and the Director also claimed that it was necessary to curtail collective bargaining rights in order to use civilian employees to fight terrorism and to carry out other military missions:

> [T]he scope of bargaining is reduced in some areas, such as management rights, to enable the Department to better utilize its civilian workforce to support rapidly changing national security challenges, such as the Global War on Terrorism and supporting humanitarian assistance missions here and abroad . . .

70 Fed. Reg. 66176.

32.     In the final regulations, the Secretary and the Director agreed to eliminate the overseas dependents school educators from the new human resources management system, as requested by the FEA in its comments. However, the Secretary and the Director rejected the FEA's request to exclude the domestic school educators from the human resources management system. 70 Fed. Reg. 66131, 66132.  In § 9901.102(f) of the final regulations, the Secretary asserted authority to include in the NSPS human resources management system any category of employees whose terms and conditions of employment are statutory exempt from Title 5, regardless of whether the NSPS human management resources management system is consistent with the terms and conditions of employment established by the statutory authority outside of Title 5 under which such employees are employed.

33.     The Secretary and the Director also rejected the FEA's request to exclude

the overseas and domestic educators from the coverage of the NSPS labor relations

system:

> We also received comments that certain groups of employees were unique and therefore should not be covered by the labor relations system. Specifically, commenters suggested that teachers should be excluded from coverage as they do not play a combat support role and already sign mobility agreements giving management all the flexibility it needs. We disagree. Their contributions in teaching the children of our service men and women and the civilian employees who support them are absolutely critical to the successful accomplishment of the Department's national security mission.  Thus, the final regulations continue to cover teachers in the labor relations system.

70 Fed. Reg. 66178.

34.     The Secretary and the Director also rejected the FEA's request not to

exclude pay from the matters which may be collectively bargained.  The Secretary and

the Director erroneously claimed that allowing the FEA to continue to bargain over pay

would constitute an expansion of existing collective bargaining rights, which is

prohibited by 5 U.S.C. § 9902:

> As a general matter, the classification or pay of Federal employees is not subject to negotiation today. This restriction is consistent with the prohibition on any expansion of the scope of bargaining in 5 U.S.C. 9902(m)(7). Therefore, we have not adopted this suggestion.

70 Fed. Reg. 66178.

**First Cause of Action**

35.     The Administrative Procedures Act, 5 U.S.C. § 703, provides that a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

36.     The Administrative Procedures Act, 5 U.S.C. § 706, provides that the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and shall compel agency action unlawfully withheld.

37.     The inclusion of DOD domestic school personnel in the NSPS human resources management system is contrary to law because the pay and other terms and conditions of employment of domestic school personnel are covered by 10 U.S.C. § 2164, the provisions of which were not waived by Congress in 5 U.S.C. § 9902. Congress intended that personnel practices for DOD domestic school personnel to be patterned after those usually encountered in the teaching profession rather than those developed for other Federal employees. Section 2164(e)(3)(A) requires the Secretary to consider the compensation levels of school personnel in the surrounding states when fixing the pay of personnel in the domestic dependents schools if he decides, as he has, to exempt them from the coverage of Title 5 pay provisions. The "pay-for-performance"

scheme contained in the NSPS human resources management system is inimical to the pay practices in comparable public school systems.

38.    The inclusion of DOD domestic school personnel in the NSPS human resources management system is arbitrary and capricious and an abuse of discretion because DOD domestic school personnel are not involved in national security work, have no national security responsibilities, are hired under the authority 10 U.S.C. § 2164 to work only within the schools, and cannot be reassigned to substitute for uniformed personnel or to perform defense or national security related duties. The DOD domestic schools were created so that military dependents did not have to attend segregated schools, rather than to advance any national security mission. The educators in the DOD domestic schools are no more "critical to the successful accomplishment of the Department's national security mission" than are the educators who teach the overwhelming majority of military dependents who attend public schools across the nation.  The inclusion of DOD domestic school personnel in the NSPS human resources management system does not advance, and is unrelated to, the avowed purpose of the system.

39.    The inclusion of DOD domestic school personnel in the NSPS human resources management system, while the teachers in the overseas schools are excluded, is arbitrary and capricious and an abuse of discretion.

**Second Cause of Action**

40.    The inclusion of DOD domestic school personnel in the NSPS labor relations system is contrary to law because it conflicts with Section 351(c) of the National Defense Authorization Act for Fiscal Year 1995, 10 U.S.C. § 2164 note, which guarantees the right of DOD domestic school personnel "to negotiate or bargain collectively with the Secretary with respect to wages, hours, and other terms and conditions of employment."

41.    The inclusion of DOD overseas school educators in the NSPS labor relations system is arbitrary, capricious and an abuse of discretion because they are not covered by the NSPS human resources management system and therefore there is no need to curtail their collective bargaining rights in order to freely implement the changes to personnel policies made by the NSPS human resources management system. Similarly, since the DOD domestic school personnel cannot legally be included in the NSPS human resources management system, their inclusion in the NSPS labor relations system is arbitrary and capricious and an abuse of discretion because there is no need to curtail their collective bargaining rights in order to freely implement the changes to personnel policies made by the NSPS human resources management system

42.    The inclusion of both the overseas educators and domestic school personnel in the NSPS labor relations system is arbitrary, capricious and an abuse of discretion because they are not involved in national security work, have no national security

responsibilities, are hired under the authority of the Overseas Teachers Pay and Personnel Practices Act or 10 U.S.C. § 2164 to work only within the schools, and cannot be reassigned to substitute for uniformed personnel or to perform defense or national security related duties. The DOD domestic schools were created so that military dependents did not have to attend segregated schools, rather than to advance any national security mission. The educators in the DOD overseas and domestic schools are no more "critical to the successful accomplishment of the Department's national security mission" than are the educators who teach the overwhelming majority of military dependents who attend public schools across the nation.  The inclusion of DOD overseas and domestic school personnel in the NSPS labor relations system does not advance, and is unrelated to, the avowed purpose of the system.

**Third Cause of Action**

43.    Assuming that the overseas and domestic school personnel may legally be included in the NSPS labor relations system, the Secretary's and the Director's reason for denying domestic dependent school personnel the right to continue to collectively bargain over pay, and for denying the overseas educators the right to continue to collectively bargain over extra duty compensation, is arbitrary and capricious because it would not constitute, as the defendants claim, an expansion of the right to collectively bargain which is prohibited by 5 U.S.C. § 9902.

**Prayer for Relief**

Wherefore, Plaintiff respectfully prays that the Court grant judgment in its favor, and that the Court grant the following relief:

a.     Declare:

i.     that the Secretary and the Director violated 10 U.S.C. § 2164 by including DOD domestic school personnel in both the NSPS human resources management system and the NSPS labor relations system;

ii.     that the Secretary and the Director violated Section 351(c) of the National Defense Authorization Act for Fiscal Year 1995, 10 U.S.C. § 2164 note, by denying DOD domestic school personnel the right "to negotiate or bargain collectively with the Secretary with respect to wages, hours, and other terms and conditions of employment;"

iii.     that section 9901.102(f) of the final regulations exceeds the Secretary's statutory authority;

iv.     that inclusion of the DOD domestic school personnel in the NSPS human resources management system is arbitrary, capricious and an abuse of discretion;

v.     that inclusion of the DOD overseas educators and DOD domestic school personnel in the NSPS labor relations system is arbitrary, capricious and an abuse of discretion; and

vi.    that denying domestic dependent school personnel the right to continue to collectively bargain over pay, and for denying the overseas educators the right to continue to collectively bargain over extra duty compensation is arbitrary, capricious and an abuse of discretion.

b.    Enjoin the Secretary and their agents, subordinates and employees from including DOD overseas educators and DOD domestic school personnel in any aspect of the National Security Personnel System, and from enforcing any provision of the NSPS regulations against them; and

c.    Grant such further and additional relief as the Court may deem just and proper.

_____
RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
202-274-1813 fax
richard@hirnlaw.com

DC Bar no. 291849

Attorney for the
Federal Education Association, Inc.

December 5, 2005

23