## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL EDUCATION     )
 ASSOCIATION, INC.,     )
              )
       Plaintiff,   )
              )
   v.         ) Case No. 1:05CV02324 EGS
              )
DONALD RUMSFELD, SECRETARY OF )
 DEFENSE, et al.,     )
              )
       Defendants.  )

### DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

defendants Donald Rumsfeld, Secretary of Defense, and Linda M. Springer, Director of the

Office of Personnel Management, respectfully move this Court to dismiss this action for lack of

subject matter jurisdiction and failure to state a claim upon which relief can be granted.  The

grounds in support of this motion are set out more fully in the annexed memorandum.

Dated: January 23, 2006   Respectfully submitted,

         PETER D. KEISLER
         Assistant Attorney General

         KENNETH L. WAINSTEIN
         United States Attorney

         _____/s/_____
         SUSAN K. RUDY, D.C. Bar # 369112
         JEFFREY M. SMITH, D.C. Bar # 467936
         JONATHAN ZIMMERMAN, MA Bar # 654255
         Attorneys, U.S. Department of Justice
         20 Massachusetts Avenue, N.W., Room 7126
         Washington, D.C.  20530
         Telephone:  (202) 514-5751
         Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FEDERAL EDUCATION                    )
  ASSOCIATION, INC.,                    )
                                          )
                     Plaintiff,                    )
          v.                    )  Case No. 1:05CV02324 EGS
                                            )
DONALD RUMSFELD, SECRETARY OF        )
  DEFENSE, <u>et al.</u>,                    )
                                            )
                  Defendants.                    )

## <u>ORDER</u>

Upon consideration of defendants' motion to dismiss, plaintiffs' opposition thereto, and

the entire record herein, it is hereby

ORDERED that defendants' motion is GRANTED, and it is

FURTHER ORDERED that this action is dismissed with prejudice.


Dated: _____        _____
                                       EMMET G. SULLIVAN
                                       UNITED STATES DISTRICT JUDGE

Copy To:

Jeffrey M. Smith
U.S. Department of Justice
20 Massachusetts Avenue, N.W., Room 7126
Washington, D.C.  20530
Attorney for Defendants

Richard J. Hirn
5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL EDUCATION | ) |
|   ASSOCIATION, INC., | ) |
| | ) |
|           Plaintiff, | ) |
|     v. | ) Case No. 1:05CV02324 EGS |
| | ) |
| DONALD RUMSFELD, SECRETARY OF | ) |
|   DEFENSE, et al., | ) |
| | ) |
|           Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
Of Counsel:                                United States Attorney

STEWART ALY
MICHAEL REHEUSER          SUSAN K. RUDY, D.C. Bar # 369112
HELEN SULLIVAN               JEFFREY M. SMITH, D.C. Bar # 467936
Attorneys                          JONATHAN ZIMMERMAN, MA Bar # 654255
U.S. Department of Defense     Attorneys, U.S. Department of Justice
                                      20 Massachusetts Avenue, N.W.,
STEVEN ABOW                   Room 7126
DAVID SCHOLL                  Washington, D.C.  20530
ROBIN RICHARDSON          Telephone:  (202) 514-5751
Attorneys                          Attorneys for Defendants
Office of Personnel Management

# TABLE OF CONTENTS

**PAGE**

Preliminary Statement ................................................................................................ 1

STATUTORY AND REGULATORY BACKGROUND ............................................ 3

I.      The National Defense Authorization Act ......................................................... 3

II.     The National Security Personnel System Regulations ...................................... 4

ARGUMENT ........................................................................................................... 6

I.      Standard of Review ......................................................................................... 6

II.     Plaintiff's Contention that Inclusion in the HR System Conflicts with
        10 U.S.C. § 2164 Is Not Ripe .......................................................................... 7

III.    Plaintiff's Contentions that the Inclusion of Domestic School Employees
        in the HR and LR Systems Is Contrary to 10 U.S.C. § 2164 Fails To State
        a Claim on which Relief May Be Granted ....................................................... 10

        A.      Plaintiff's Contention that Inclusion of the Domestic School
                Employees in the HR System Conflicts with 10 U.S.C. § 2164
                Fails To State a Claim ....................................................................... 10

        B.      Plaintiff's Contention that Inclusion of the Domestic School
                Employees in the LR System Conflicts with 10 U.S.C. § 2164
                Fails To State a Claim ....................................................................... 13

IV.     Plaintiff's Contention that the Inclusion of Domestic School Employees
        in the HR System while Overseas School Employees Are Excluded
        Is Arbitrary and Capricious and an Abuse of Discretion Fails To State
        a Claim on which Relief May Be Granted ....................................................... 15

V.      Plaintiff's Contention that the Inclusion of Domestic School Employees
        in the HR System Is Arbitrary and Capricious and an Abuse of Discretion
        Because of the Domestic School Employees' Relationship to National
        Security Fails To State a Claim on which Relief May Be Granted .................. 16

VI.    Plaintiff's Contention that the Inclusion of the Domestic and Overseas
       School Employees in the NSPS Labor Relations System Is Arbitrary and
       Capricious and an Abuse of Discretion Fails To State a Claim on which
       Relief May Be Granted ................................................................................. 19

VII.   Plaintiff's Contention that Treating Plaintiff's Bargaining Unit Members
       Identically to All Other Bargaining Units Employees Is Arbitrary and
       Capricious and an Abuse of Discretion Fails To State a Claim on
       which Relief May Be Granted ....................................................................... 21

CONCLUSION ...................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                    <u>PAGE(S)</u>

<u>Action Alliance for Senior Citizens of Greater Philadelphia v. Heckler</u>,
     789 F.2d 931 (D.C. Cir. 1986) ....................................................................... 10

<u>Atlantic States Legal Foundation v. Environmental Protection Agency</u>,
     325 F.3d 281 (D.C. Cir. 2003) ....................................................................... 10

<u>Barnhart v. Walton</u>, 535 U.S. 212 (2002) .................................................................. 7

<u>Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419 U.S. 281 (1974) ........................ 6

<u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984) ........... 6, 7, 12, 25

<u>"Complex" Consolidated Edison Co. of N.Y. v. FERC</u>, 165 F.3d 992
     (D.C. Cir. 1999) ........................................................................................... 16

<u>Dep't of the Army v. FLRA</u>, 914 F.2d 1291 (9th Cir. 1990) .................................................. 22

<u>Fort Stewart Schools v. FLRA</u>, 495 U.S. 641 (1990) ................................................ 12, 16, 22

<u>Morton v. Mancari</u>, 417 U.S. 535 (1974) .................................................................. 14

<u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29 (1983) ................... 6

<u>Nat'l Park Hospitality Ass'n v. Dep't of the Interior</u>, 538 U.S. 803 (2003) ................................ 8

<u>Nat'l Tank Truck Carriers, Inc. v. EPA</u>, 907 F.2d 177 (D.C. Cir. 1990) ...................................... 6

<u>Nationsbank of Texas, N.A. v. United States</u>, 269 F.3d 1332 (Fed. Cir. 2001) ........................ 21

<u>North Carolina v. FERC</u>, 112 F.3d 1175 (D.C. Cir. 1997) ....................................................... 3, 6

<u>Omnipoint Corp. v. FCC</u>, 78 F.3d 620 (D.C. Cir. 1996) ............................................................ 6

<u>Overseas Federation of Teachers v. United States</u>, 674 F.2d 34 (D.C. Cir. 1982) .................... 15

<u>Reno v. Catholic Soc. Services, Inc.</u>, 509 U.S. 43 (1993) ......................................................... 8

<u>Texas v. United States</u>, 523 U.S. 296 (1998) .......................................................................... 10

## STATUTES

5 U.S.C. § 706(2) ........................................................................................... 6

5 U.S.C. §§ 2101-9904 ................................................................................... 3

5 U.S.C. §§ 3501-3503 ................................................................................. 12

5 U.S.C. § 5332 ...................................................................................... 22, 23

5 U.S.C. § 7102(2) ....................................................................................... 22

5 U.S.C. § 7103(a)(14)(C) ...................................................................... 22, 23

5 U.S.C. § 7701, *et seq* ................................................................................ 22

5 U.S.C. § 9902 ...................................................................................... <u>passim</u>

10 U.S.C. § 2164 .................................................................................... <u>passim</u>

20 U.S.C. § 901 ........................................................................................... 20

20 U.S.C. § 903 ..................................................................................... 15, 16

National Defense Authorization Act for Fiscal Year 2004 ("NDAA"), Pub. L. No. 108-136, 117 Stat. 1392 (Nov. 24, 2003) ......................................................................... 3

## RULES AND REGULATIONS

5 C.F.R. § 9901.102(a) ................................................................................... 5

5 C.F.R. § 9901.342-361 ................................................................................ 9

5 C.F.R. § 9901.351-356 .............................................................................. 11

5 C.F.R. § 9901.602 ..................................................................................... 12

5 C.F.R. § 9901.901 ....................................................................................... 5

5 C.F.R. §§ 9901.901-928 .............................................................................. 5

5 C.F.R. § 9901.903 ..................................................................................... 14

70 Fed. Reg. 66117 ...................................................................................... 20

70 Fed. Reg. 66118 ................................................................................................... passim

70 Fed. Reg. 66120-23 ...................................................................................................... 4

70 Fed. Reg. 66178 ................................................................................................... passim

70 Fed. Reg. 66195 ......................................................................................................... 24

## LEGISLATIVE HISTORY

H.R. Armed Serv. Committee Report, 108-106 (May 16, 2003) ......................................... 18, 19

H.R. Conf. Rpt. 108-354 (Nov. 7, 2003) ......................................................................... 1, 3, 18

## MISCELLANEOUS

James Stedman & Gail McCallion, *Performance-Based Pay for Teachers*,
    ......................................................................................................................... 11

**Preliminary Statement**

In November 2003, responding to the need for a more "flexible and responsive personnel system for the civilian employees of the Department of Defense," H.R. Conf. Rpt. 108-354, at 759 (Nov. 7, 2003), Congress granted discretion to the Secretary of Defense ("Secretary") and the Director of the Office of Personnel Management ("Director" and "OPM" respectively), to remake the human resources management ("HR") and labor relations ("LR") systems governing civilian employees at the Department of Defense ("DoD"). Recognizing that the civilian employees who will operate under these new systems play a crucial role in supporting our nation's national security, the authority granted by Congress was expansive, permitting the Secretary and Director to apply the HR system to "some or all of the organizational or functional units of the [DoD]," 5 U.S.C. § 9902(a), and to apply the LR system to "all bargaining units within the Department of Defense, all employee representatives of such units, and the Department of Defense and its subcomponents," 5 U.S.C. § 9902(m)(8).

These employees are all part of a cohesive total force, one which operates as a single unit providing crucial support to the nation's military. Plaintiff, a labor union that claims to represent approximately 8,000 (Pl. Compl. ¶¶ 8-9) of the 700,000 civilian employees employed by DoD, however, seeks to exclude its members and bargaining units from the Department-wide HR and LR systems authorized by Congress. Plaintiff's claims are based on purported statutory requirements that simply do not exist. Moreover, the compartmentalized, individualized review that Plaintiff would require DoD to conduct before placing a group of employees within the Department-wide systems would bring the personnel reform Congress authorized to a standstill, beget years of litigation over which employees have what role in national security, and leave DoD with a patchwork

personnel system that would be conducive neither to managerial efficiency nor national security. This is contrary to the clear Congressional intent expressed in 5 U.S.C. § 9902.

As demonstrated below, Plaintiff's contention that placing the domestic school employees in the HR system violates 10 U.S.C. § 2164 is not ripe and, in any event, lacks merit because there is no conflict between Section 2164 and the regulations promulgated by the Agencies. Similarly, placing the domestic school employees in the LR system does not violate Section 2164, because that section does not create or ensure collective bargaining procedures. Placing the domestic school employees in the HR system, while excluding the overseas school employees from the HR system, is not arbitrary and capricious because the two groups are governed by different statutes with different terms–the domestic school employees are statutorily eligible for the HR system while the overseas school employees are not. Placing the domestic school employees in the HR system is not arbitrary and capricious based on their relationship to national security responsibilities–the statute permits the Agencies to include as many as "all" DoD civilian employees, there is no requirement for an employee group by employee group review, and the HR system promotes improved personnel management as well as national security. Placing school employees in the LR system is not arbitrary and capricious as the statute clearly contemplates that the LR system will encompass "all bargaining units within the Department of Defense," and the school employees are part of the Total Force support for the military. Finally, it is not arbitrary and capricious to decline to give the school employees an exemption from a key provision of the LR system prohibiting the collective bargaining of compensations.

In short, the Secretary of Defense and the Director of OPM (the "Agencies") have properly followed the law in creating a human resource management system and a labor relations system for

DoD's civilian employees, including the school employees represented by Plaintiff. And, the Agencies' decisions easily meet the "quite deferential" standard of the Administrative Procedures Act ("APA"). *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997). Accordingly, Plaintiff's Complaint fails to state a claim upon which relief may be granted, and thus, should be dismissed.

## STATUTORY AND REGULATORY BACKGROUND

### I.     The National Defense Authorization Act

As part of the National Defense Authorization Act for Fiscal Year 2004 ("NDAA"), Pub. L. No. 108-136, 117 Stat. 1392 (Nov. 24, 2003), Congress, being "fully appreciat[ive of] the need for a more flexible and responsive personnel management system for the civilian employees of the Department of Defense," H.R. Conf. Rpt. 108-354, at 759 (Nov. 7, 2003), granted the Secretary of Defense and the Director of OPM broad authority to waive or modify much of Title 5 of the U.S. Code and to establish a new "National Security Personnel System," 5 U.S.C. § 9902(a). Section 9902(a) provides that: "Notwithstanding any other provision of this part,[1] the Secretary may, in regulations prescribed jointly with the Director, establish, and from time to time adjust, a human resources management system for some or all of the organizational or functional units of the Department of Defense." *Id.* The next section provides extensive "requirements" for the HR system, including that it be "flexible" and "contemporary" and include a "pay-for-performance evaluation system." *See* 5 U.S.C. § 9902(b). Nowhere in the system requirements or elsewhere in the statute did Congress require the Agencies to undertake an individualized review of each employee's relationship to DoD's national security mission or to exclude employees from the HR system on that

---

[1] The term "this part" refers to Part III of Title 5, 5 U.S.C. §§ 2101-9904.

basis.

The NDAA sets forth the procedures which the Agencies are to use in collaborating with employee representatives regarding the development and implementation of the HR system.  *See* 5 U.S.C. § 9902(f).  These procedures "are the exclusive procedures for the participation of employee representatives in the planning, development, implementation, or adjustment of the National Security Personnel System."  5 U.S.C. § 9902(f)(4).

The NDAA also authorizes the Agencies to "establish and from time to time adjust a labor relations system for the Department of Defense."  5 U.S.C. § 9902(m)(1).  Unlike the HR system, the LR system is required "to address the unique role that the Department's civilian workforce plays in supporting the Department's national security mission."  *Id.*  However, the statute does not anticipate any parsing of that workforce, providing that the LR system "shall be binding on all bargaining units within the Department of Defense, all employee representatives of such units, and the Department of Defense and its subcomponents, and shall supercede all other collective bargaining agreements[,] . . . except as otherwise determined by the Secretary."  5 U.S.C. § 9902(m)(8).[2]  The authority to implement the LR system expires six years after the enactment of the NDAA.  5 U.S.C. § 9902(m)(9).

## II.    The National Security Personnel System Regulations

After extensive collaboration with labor unions representing DoD's civilian employees, *see* 70 Fed. Reg. 66116, 66120-23 (Nov. 1, 2005), the Agencies promulgated regulations establishing

---

[2] In implementing this authority, the Secretary and the Director have limited its exercise to supersede those provisions of existing agreements that conflict with 5 C.F.R. Part 9901 or implementing issuances that implement Part 9901.  Otherwise, under 5 U.S.C. § 9902(m)(8), the labor relations system would be binding on, and would supersede, collective bargaining agreements across the Department.

an HR system and an LR system.  *See* 5 C.F.R. Part 9901.  The HR system includes performance based pay as required by Congress (subpart C), as well as, *inter alia*, a more robust performance management system (subpart D), more efficient hiring authority (*see* subpart E), and a revised adverse action appeals process (subparts G & H).  *See* 70 Fed. Reg. at 66119.

Subpart I of the rule (5 C.F.R. §§ 9901.901-9901.928) "implement[s] the provisions in 5 U.S.C. 9902(m) relating to the Department's labor-management relations system."  5 C.F.R. § 9901.901. As the regulations reflect, the purposes of the LR system are to "address[] the unique role that the Department's civilian workforce plays in supporting the Department's national security mission and promote[] a collaborative issue-based approach to labor management relations," and to "recognize the rights of DoD employees to organize and bargain collectively, as provided for in 5 U.S.C. 9902 and this part . . . ."  5 C.F.R. § 9901.901.

The rule provides that "[p]ursuant to the provisions of 5 U.S.C. 9902, all civilian employees of DoD are eligible for coverage under one or more of subparts B through I of this part, except to the extent specifically prohibited by law."  5 C.F.R. § 9901.102(a).  It also states that the Secretary may set the date "for applying [the LR system] to all eligible employees in accordance with 5 U.S.C. 9902(m)."  5 C.F.R.  § 9901.102(b)(1).  The Secretary may apply the subparts of the rule implementing the HR system "to a specific category or categories of eligible civilian employees in organizations and functional units of the Department at any time . . . ."  5 C.F.R. § 9901.102(b)(2).

The Agencies determined that the overseas school employees are not eligible for the HR system, because their pay is set by a non-discretionary statutory provision outside of Title 5.  *See* 70 Fed. Reg. at 66131.  The Agencies determined that the domestic school employees are eligible for the HR system because the pay provisions of the HR system do not conflict with 10 U.S.C. § 2164.

*See* 70 Fed. Reg. at 66131.  The Agencies determined that both groups of school employees are eligible for the LR system.

Thus, both the overseas educational personnel and the domestic educational personnel will be included, along with all other bargaining unit employees, within the LR system when that system is made effective.  The overseas educational personnel are not eligible for inclusion in the HR system.  The domestic educational personnel are eligible for inclusion in the HR system, and they are scheduled to be included in "Spiral Two" of the implementation of this system.  *See* 70 Fed. Reg at 66185.

## ARGUMENT

### I.     Standard of Review

Plaintiff's claims are reviewed under the APA and may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). The review applicable to Plaintiff's arbitrary and capricious claims is "quite deferential" to the Agencies.  *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (The "arbitrary and capricious" standard applies a "narrow" scope of review, and "a court is not to substitute its judgment for that of the agency."); *Omnipoint Corp. v. FCC*, 78 F.3d 620, 632 (D.C. Cir. 1996) (describing this as a "deferential standard").  The Court "must affirm the agency's decision if a rational basis for it is presented." *Nat'l Tank Truck Carriers, Inc. v. EPA*, 907 F.2d 177, 182 (D.C. Cir. 1990) (quotation omitted).[3]

---

[3] Indeed, a reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

Plaintiff's statutory contentions are subject to the well-known standard of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Where, as here, a case involves an agency's construction of the statute that it administers, the Court first inquires "whether Congress has directly spoken to the precise question at issue." If Congress's intent is clear, "that is the end of the matter," and the Court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. Put another way, the Court must decide "whether the statute unambiguously forbids the Agency's interpretation." *Barnhart v. Walton*, 535 U.S. 212, 218 (2002). If Congress has not "directly" addressed "the precise question at issue," a court may not "impose its own construction on the statute." *Chevron*, 467 U.S. at 843. Rather, a court will defer to the agency's interpretation so long as it is "based on a permissible construction of the statute." *Id.*

## II.  Plaintiff's Contention that Inclusion in the HR System Conflicts with 10 U.S.C. § 2164 Is Not Ripe

Plaintiff argues that including domestic school employees in the NSPS HR system is contrary to law, specifically, 10 U.S.C. § 2164(e), the statute under which domestic school employees are currently appointed. Section 2164(e) provides the Secretary with the permissive authority to enter agreements to provide for the elementary or secondary education of dependents of members of the armed forces, as well as the permissive authority to establish positions for civilian employees for the schools established under section 2164 and to appoint individuals into those positions. It also sets forth various standards to govern these arrangements, including providing criteria related to pay, should the Secretary choose to establish such positions. Under § 2164(e), the Secretary is authorized, but not required, to hire civilian employees and, if doing so, to fix their compensation "without regard to the provisions of any other law relating to the number, classification or

-7-

compensation of employees."  Id.  In doing so, however, the statute requires the Secretary to

"consider" three factors:

> (i)   the compensation of comparable employees of the local educational agency
>       in the capital of the State where the military installation is located;
>
> (ii)  the compensation of comparable employees in the local educational agency
>       that provides public education to students who reside adjacent to the military
>       installation; and
>
> (iii) the average compensation for similar positions in not more than three other
>       local educational agencies in the State in which the military installation is
>       located.

10 U.S.C. § 2164(e)(3)(A)(i)-(iii).

Plaintiff claims that because 10 U.S.C. § 2164(e) requires the Secretary to consider these

three factors in setting pay for domestic school employees, the inclusion of domestic school

employees in the HR system, which establishes a performance pay system, would violate 10 U.S.C.

§ 2164(e).  According to Plaintiff, a performance pay system is fundamentally incompatible with

§ 2164(e).  This claim is not yet ripe.

As the Supreme Court has explained, "[t]he ripeness doctrine is 'drawn both from Article III

limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quoting in part *Reno*

*v. Catholic Soc. Services, Inc.*, 509 U.S. 43, 57 n.18 (1993) (hereinafter "*CSS*").  The ripeness

requirement is "designed 'to prevent the courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements over administrative policies, and also to protect the

agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties.'"  *Nat'l Park Hospitality*, 538 U.S. at 807-

808 (quoting in part *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967)). To determine whether administrative action is ripe for judicial review, the courts "evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality*, 538 U.S. at 808. "[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id.* at 808 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

As the Supreme Court explained in *CSS*, promulgation of a regulation may itself affect parties concretely enough to satisfy the ripeness requirement where, for example, a regulation presents the Plaintiffs "with an immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation." 509 U.S. at 57. Conversely, a challenge to a "regulation, the impact of which could not 'be said to be felt immediately by those subject to it in conducting their day-to-day affairs' . . . would not be ripe before the regulation's application to the plaintiffs in some more acute fashion, since 'no irremediabl[y] adverse consequences flow[ed] from requiring a later challenge.'" *Id.* at 58 (*quoting in part Toilet Goods Assn. v. Gardner*, 387 U.S. 158, 164)).

Plaintiff's claims as to the purported conflict between the NSPS HR system and 10 U.S.C. § 2164(e) are not yet ripe because even if the domestic school employees were moved to the NSPS HR system, which has not yet happened, it is not at all clear what form their pay system would take. While the challenged regulations set forth the general parameters of a performance pay system, *see* 5 C.F.R. § 9901.342-361, the specifics of that system are left to be decided by future implementing

issuances.  At this time, the specifics of the performance pay system are unknown, and until the specific terms of that system are decided, it is impossible to determine if the system will, in fact, conflict with § 2164(e).  There is no immediate consequence facing Plaintiff because no regulation has been determined, and Plaintiff has not alleged that it will suffer any hardship if judicial review is delayed until some concrete action is taken.  Any ruling on whether the performance pay system applied to domestic school employees should they be moved into the NSPS HR system would, at this time, rest largely on speculation about the as-of-yet undetermined specifics of a hypothetical performance pay system. *See Action Alliance for Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986) (claims are unripe "when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it"); *Atlantic States Legal Foundation v. Environmental Protection Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting in part *Texas v. United States*, 523 U.S. 296, 300 (1998)) ("Even purely legal claims may be unfit for review" where they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

III.    **Plaintiff's Contentions that the Inclusion of Domestic School Employees in the HR and LR Systems Is Contrary to 10 U.S.C. § 2164 Fails To State a Claim on which Relief May Be Granted**

   A.    **Plaintiff's Contention that Inclusion of the Domestic School Employees in the HR System Conflicts with 10 U.S.C. § 2164 Fails To State a Claim**

Even if plaintiff's claim is ripe, they still fail to state a claim because there is no facial inconsistency between the challenged regulations and 10 U.S.C. § 2164.   The only requirement imposed by 5 U.S.C. § 9902 is that the NSPS contain: "[a] pay-for-performance evaluation system

-10-

to better link individual pay to performance, and provide an equitable method for appraising and compensating employees." *Id.*, § 9902(b)(6)(I). The details of the system are left to the Secretary's discretion. Section 2164, on the other hand, says nothing at all about performance pay. The only pay requirements § 2164 imposes are the § 2164(e) factors, which require that in setting salaries for Title 10 school employees, the Secretary must consider the salaries of comparable employees in local schools. The § 2164(e) factors, however, do not mandate the *way* in which school employees must be paid. So long as local school salaries are considered in setting the salaries of Title 10 school employees, paying the Title 10 school employees through a performance pay system presents no conflict with § 2164.

As Plaintiff's own exhibits recognize, there are many ways to design a performance pay system. *See* James Stedman & Gail McCallion, *Performance-Based Pay for Teachers*, 1-2, 7, 9-15 (Congressional Record Service, 2001) (Appx. to Pl's Mem. at A48-A66) (discussing a variety of ways to structure performance pay systems for school employees). Any performance pay system applied to domestic school employees could adequately incorporate the § 2164(e) factors in a way that would not conflict with the terms of that statute. Additionally, § 2164(e) requires only that the Secretary "consider" the comparable salaries of local school employees. It does not require that the Secretary exactly match those salaries for Title 10 school employees. Therefore, even under § 2164(e), there is no direct bar to the pay banding structure contemplated by the regulations. *See* 5 C.F.R. § 9901.351-356.

Furthermore, Plaintiff's argument against inclusion in a performance pay system cannot be that domestic school employees' pay must be set solely through application of the § 2164(e) factors, because as Plaintiff admits, domestic school employees' pay is currently set not through § 2164(e)

-11-

alone, but through collective bargaining. *See* Pl. Mem. 41-42. The agreements reached through collective bargaining presumably account for the § 2164(e) factors in much the same way a future performance pay system could. The Supreme Court examined a very similar situation in *Fort Stewart Schools v. FLRA*, 495 U.S. 641 (1990), finding no inherent conflict between setting teachers' pay through collective bargaining and a statute that required the relevant schools' per-pupil expenditures to be equal to that of particular public schools in the states in which they were located. The Court found that there was enough flexibility in the collective bargaining system to account for the statutory requirement, and that in that way, collective bargaining and § 2164 could also co-exist. *See id.* at 653-57. The same is true of the instant case. There is more than enough flexibility in a performance pay system to account for the § 2164(e) factors, should it be necessary to do so.[4] And, of course, to the extent that there is any ambiguity, the Agencies' interpretation of the statutes that they administer is entitled to deference under *Chevron*.

---

[4] Plaintiff also claims that the NSPS HR system and "the domestic school personnel system are. . .inconsistent because the Secretary and the Director have exempted all employees covered by the HRMS from the reduction-in-force provisions of 5 U.S.C. §§ 3501-3503. However, Congress did not waive the applicability of 5 U.S.C. §§ 3501-3503 when it created the domestic school personnel system in 10 U.S.C. § 2164(e)." Pl. Mem. at 27 (citations omitted). Despite Plaintiff's assertion, there is no conflict here because 10 U.S.C. § 2164 says absolutely nothing about reduction-in-force procedures. Congress, however, did address those provisions in 5 U.S.C. § 9902, granting the Secretary and Director authority to waive those provisions of Title 5 in conjunction with the NSPS HR system by explicitly absenting the reduction-in-force provisions of Title 5 from a list of non-waivable provisions under § 9902. *See* 5 U.S.C. § 9902(d). Just because Congress failed to waive provisions of Title 5 in an earlier statute– or, stated more accurately, failed to mention certain provisions of Title 5 in an earlier statute– does not mean that Congress cannot decide to authorize their waiver in a later statute. And, Congress having done so here, defendants acted within the authority provided them in choosing to waive those provisions of Title 5 in the NSPS regulations. *See* 5 C.F.R. § 9901.602.

**B.    Plaintiff's Contention that Inclusion of the Domestic School Employees in the LR System Conflicts with 10 U.S.C. § 2164 Fails To State a Claim**

Plaintiff additionally claims that including the domestic school employees in the NSPS LR system is contrary to law because the LR system does not permit bargaining over pay, and § 351(c) of the National Defense Authorization Act for Fiscal Year 1995, P.L. 103-337, codified as a savings provision at 10 U.S.C. § 2164 note (hereinafter referred to as "the savings provision"), "guarantees the right of DoD domestic school personnel to negotiate or bargain collectively with the Secretary with respect to wages, hours, and other terms and conditions of employment."  Pl. Mem. at 40 (internal quotation marks omitted).  The § 2164 savings provision, however, "guarantees" no such right.

By its terms, the only "guarantee" the savings provision makes concerning collective bargaining is that nothing in § 2164 will override any pre-existing collective bargaining rights held by domestic school employees at the time of passage of 10 U.S.C. § 2164.  Specifically, the savings provision states:

> *Nothing in section 2164 of title 10, United States Code* [this section], as added by subsection (a), shall be construed as affecting the rights in existence on the date of the enactment of this Act [Oct. 5, 1994] of an employee of any school established under such section (or any other provision of law enacted before the date of enactment of this Act that established a similar school) to negotiate or bargain collectively with the Secretary with respect to wages, hours, and other terms and conditions of employment.

10 U.S.C. § 2164 note (emphasis supplied).  Plaintiff reads too broad a guarantee into this obviously limited language.  The savings provision, by its terms, is limited exclusively to Section 2164.  It does not, as Plaintiff suggests, create a generalized right to collective bargaining.  It provides only that

*Section 2164* should not be read to override pre-existing collective bargaining rights. The savings provision does not, however, prevent changes made to collective bargaining rights by any statute or regulation other than § 2164.

It is true, as Plaintiff explains, that under the NSPS LR system, pay is excluded from the topics over which the Secretary may bargain. *See* 5 C.F.R. § 9901.903; *Pl. Mem.* at 41. This does not, however, conflict with the § 2164 savings provision, because, as explained, nothing in that provision prevents the limitation of collective bargaining rights by statutes or regulations other than § 2164. Nor is this a situation, as Plaintiff suggests, of one statute superceding another. *Pl. Mem.* at 41. Chapter 9902, which authorized the Secretary to determine the topics subject to collective bargaining under the NSPS LR system, does not supercede, or even conflict with, the § 2164 savings provision because the savings provision does not apply to any law other than § 2164. The two can co-exist because the NSPS LR's limitation of collective bargaining over domestic school employees' pay is drawn from 5 U.S.C. § 9902, not from § 2164. In this way, the savings provision continues to be effective because "[n]othing in section 2164 of title 10, United States Code. . . [has been] construed as affecting," 10 U.S.C. § 2164 note, the collective bargaining rights of domestic school employees appointed under 10 U.S.C. § 2164. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

**IV.    Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR System while Overseas School Employees Are Excluded Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted**

The inclusion of the domestic school employees and exclusion of the overseas school employees in the HR system is not arbitrary and capricious or an abuse of discretion, because, as Plaintiff concedes, the two groups are governed by different statutory provisions, which have different requirements.  Overseas school employees must be hired pursuant to 20 U.S.C. § 903.  *See* 20 U.S.C. § 903(a) ("The Secretary of Defense *shall* conduct the employment and salary practices . . . in accordance with this Act." (emphasis supplied)).  That section mandates that the Secretary "*shall* fix the basic compensation for [overseas school employees] at rates equal to the average of the range of rates of basic compensation for similar positions of a comparable level of duties and responsibilities in urban school jurisdictions in the United States of 100,000 or more population." 20 U.S.C. § 903(c) (emphasis supplied).  This provision does not provide the Secretary with discretion, but requires him to set wages of overseas school employees to equal those of certain stateside equivalents "to the extent reasonably possible." *Overseas Federation of Teachers v. United States*, 674 F.2d 34, 37 (D.C. Cir. 1982).  Because the payment of overseas school employees is set by a nonwaivable, non-discretionary statute, these employees are ineligible for the HR system which includes the NSPS pay system.  *See* 70 Fed. Reg. at 66131.[5]

By contrast, domestic school employees *may* (but need not) be hired under 10 U.S.C. § 2164. *See* 10 U.S.C. § 2164(e)(2) ("The Secretary *may* . . . appoint individuals to [civilian school] positions." (emphasis supplied)).  Unlike Section 703 (governing overseas school employees),

_____

[5] For this same reason, overseas school employees have not been permitted to collectively bargain their basic pay.  *Overseas Education Ass'n & United States Dep't of Defense*, 45 FLRA 1185, 1191-92 (1992).

Section 2164 (governing domestic school employees) requires only that the Secretary consider certain factors in setting pay, and thus is not incompatible with the NSPS pay system. *See supra* Part II.B. The fact that domestic and overseas school employees are not similarly situated provides "a rational basis for treating them differently." *"Complex" Consolidated Edison Co. of N.Y. v. FERC*, 165 F.3d 992, 1013 (D.C. Cir. 1999).

In light of the different statutory requirements, Plaintiff's contention that it is arbitrary and capricious to utilize different systems for setting compensation for domestic and overseas education personnel is frivolous. Domestic and overseas school employees have long been treated differently due to the statutory differences. For example, domestic school employees appointed pursuant to Section 2164 have been permitted to collectively bargain compensation while overseas school employees appointed pursuant to Section 903 have been prohibited from collectively bargaining "basic compensation." *Compare Fort Stewart*, 495 U.S. 641, *with Overseas Education Ass'n & United States Dep't of Defense*, 45 FLRA 1185, 1191-92 (1992).

The Agencies have rationally decided to include all eligible employees in the HR system. Because of Congress' statutory directives, the domestic school employees fall within this group, while the overseas school employees do not. The Agencies' differential treatment of the domestic and overseas school employees is mandated by the different applicable statutes and is not arbitrary, capricious, or an abuse of discretion.

**V.    Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR System Is Arbitrary and Capricious and an Abuse of Discretion Because of the Domestic School Employees' Relationship to National Security Fails To State a Claim on which Relief May Be Granted**

Plaintiff's argument that inclusion of domestic school employees in the HR system is

arbitrary and capricious because domestic school employees purportedly have no national security role is also meritless.  The rule that Plaintiff seeks to craft–that DoD must evaluate the individual relationship that each group of employees has with national security–has no basis in the statute, has been constructed by Plaintiff entirely out of whole cloth, and is counter to the intent of Congress clearly expressed in the statute.  Because it conflicts with the statutory intent, Plaintiff's contention should be dismissed.

The NDAA authorizes the Agencies to implement "a human resources management system for *some or all* of the organizational or functional units of the Department of Defense."  5 U.S.C. § 9902(a) (emphasis supplied).  The statute sets forth a number of requirements for the HR system.  For example, it must be "flexible" (*id.* § 9902(b)(1)); be "contemporary" (*id.* § 9902(b)(2)); retain certain statutory rights (*id.* § 9902(b)(3)); ensure collective bargaining as provided in the statute (*id.* § 9902(b)(4)); and "include a performance management system" that contains, *inter alia*, a "pay-for-performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees" (*id.* § 9902(b)(6)).  But nowhere in this long list of Congressionally-mandated requirements is there any requirement that DoD undertake an individualized review of its 700,000-person civilian workforce to evaluate the specific connection between national security and each type of employee.  Indeed, there is no hint in this provision that employees should be omitted from the "flexible" and "contemporary" HR system based on their proximity to national security responsibilities.  To the contrary, Congress authorized the Agencies to include as many as "all" civilian employees in the human resources management system, despite the fact that Congress was undoubtedly aware that the hundreds of thousands of civilian DoD employees – from secretaries, to mailroom workers, to base exchange workers, to lawyers, to janitors

– have different roles in supporting DoD as it carries out its national security mission.

Moreover, while the promotion of national security is a major reason for the HR system, and the Agencies have structured the system to promote national security, national security is not the only value served by the HR system – improved personnel management is another important goal of the system. These dual goals are the reason that Congress mandated that the HR system be promulgated jointly by DoD (possessing national security expertise) and OPM (possessing personnel management expertise). 5 U.S.C. § 9902(a). As a result, the Agencies have moved away from an "inflexible, one-size-fits-all system of defining work, hiring staff, managing people, assessing and rewarding performance, and advancing personnel," 70 Fed. Reg. at 66118, and developed an "HR management system [that] is a foundation for a leaner, more flexible support structure and will help attract skilled, talented, and motivated people, while also retaining and improving the skills of the existing workforce," *id. See also id.* at 66117 (The Agencies "prescribe this final regulation to establish a flexible and contemporary system, consistent with statutory merit system principles and prohibitions against prohibited personnel practices . . . for managing the Department's human capital."); *id.* at 66118 ("The Department's 20 years of experience with transformational personnel demonstration projects, covering nearly 30,000 DoD employees has shown that fundamental change in personnel management has positive results on individual career growth and opportunities, workforce responsiveness, and innovation."). In doing so, DoD has sought to "determine the most appropriate and productive approach to management of civilian personnel [within] the Department of Defense," H.R. Conf. Rpt. 108-354, at 759 (Nov. 7, 2003), and craft an HR system with the "greater personnel flexibility" that Congress intended, H.R. Armed Serv. Committee Report, 108-106 (May 16, 2003). *See also id.* (showing Congress' intent to "transform the very management structures and processes

-18-

of the Department of Defense"); Remarks by the President at Signing of NDAA, 2003 WL 22766865, at *3 (Nov. 24, 2003) ("Nearly 700,000 civilian defense workers have been laboring under a cumbersome, inefficient system designed for another century.").

Finally, it is clearly rational and efficient for DoD to have a single HR system that encompasses as many civilian employees as possible, as Congress clearly anticipated when it authorized "a human resource management system" rather than several human resource management systems. *See infra* Part IV.

**VI.    Plaintiff's Contention that the Inclusion of the Domestic and Overseas School Employees in the NSPS Labor Relations System Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted**

The Agencies have included all bargaining units within DoD (and their labor representatives) in the LR system. This tracks clearly expressed Congressional intent:

> The labor relations system developed or adjusted under this subsection shall be binding on *all bargaining units* within the Department of Defense, *all employee representatives* of such units, and the Department of Defense and its subcomponents, and shall supercede all other collective bargaining agreements for bargaining units in the Department of Defense, including collective bargaining agreements negotiated with employee representatives at the level of recognition, except as otherwise determined by the Secretary.

5 U.S.C. § 9902(m)(8) (emphases supplied). This statutory language is controlling, and Plaintiff's contrary contention must be dismissed.

Plaintiff contends that the school employees' bargaining units should not be among the "all bargaining units" covered by the LR system because the school employees "are not involved in national security operations." Pl. Mem. at 39. However, while the school employees may not view themselves as relevant to national security, they are indeed part of the extensive civilian support system that provides crucial services in support of our military men and women. DoD's school

-19-

employees are part of the "Total Force (military personnel, civilian employees, and contractors) [which] thinks and operates as one cohesive unit." 70 Fed. Reg. at 66117. These school employees (along with the rest of the civilian workforce) have a "unique role in . . . supporting the Department's national security mission" within the meaning of 5 U.S.C. 9902(m)(1). As the preamble states, "DOD civilians are unique in government" because they are an "integral part of an organization that has a military function" and because they "must complement and support the military around the world" (70 Fed. Reg. at 66117) and "must be an integrated, flexible and responsive part of the team" (*Id.* at 66118). Specifically, DoD's educators provide "absolutely critical [contributions] to the successful accomplishment of the Department's national security mission." 70 Fed. Reg. at 66178. Indeed, Congress would not have provided for domestic and overseas schools if it had not determined that there was a national security related need for them.[6] This Total Force support system consists of hundreds of thousands of people from truck drivers to technicians to janitors to attorneys. It is this entire support system, and not any part in isolation, that Congress intended to place under the NSPS LR system. 5 U.S.C. § 9902(m)(1) (authorizing "a labor relations system for the Department of Defense").

Plaintiff's contrary position would enmesh the Agencies and the Court in myriad claims by various civilian employees, such as lawyers, law enforcement personnel, civilian mariners, and

---

[6] Plaintiff's contention that DoD's school employees teach only about 12% of all military dependents is irrelevant. Pl. Mem. at 40. Congress has determined that these educators are necessary to teach dependents at certain bases where no adequate local educational option exists. *See* 10 U.S.C. § 2164(a) (Secretary may set up schools domestically where "appropriate educational programs are not available through a local educational agency"); 20 U.S.C. § 901 (authorizing teachers for schools outside the United States). The education of these military dependent children is critical regardless of whether there are other children at other bases whose education can be provided by local public schools.

-20-

others, who claim to have a unique situation and/or to be distant from front line national security operations.[7]  By attempting to conjure a rule that every type of employee be evaluated individually without regard to the overall support system, Plaintiff attempts to pull the thread that will unravel the tapestry.  Such a rule would lead to near-endless bureaucratic work and litigation, and would leave DoD with a patchwork of differing labor relations systems that would not be conducive to national security or employee cohesiveness, and would not be consistent with Congress' desire for a single LR system covering "all bargaining units."  5 U.S.C. § 9902(m)(8); *cf. Nationsbank of Texas, N.A. v. United States*, 269 F.3d 1332, 1337 (Fed. Cir. 2001) (imposition of uniformity is a sufficient "rational purpose" to support agency action).  It is not arbitrary and capricious or an abuse of discretion for DoD to follow Congress' clearly expressed intent and to implement a workable, uniform LR system.

## VII.    Plaintiff's Contention that Treating Plaintiff's Bargaining Unit Members Identically to All Other Bargaining Units Employees Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted

Plaintiff's final argument is that even if school employees are properly included in the LR system (which they are), they should have a special exception from the general prohibition on collective bargaining of pay (an exception that is mandated for the vast majority of DoD employees by 5 U.S.C. § 9902(m)(7)'s directive that the LR system not expand the scope of bargaining).  Pl. Mem. at 41-42.  To exempt Plaintiff's members from this key provision of the LR system would defeat the intent of 5 U.S.C. §§ 9902(f) and 9902(m), as well as Congress' interest in DoD maintaining a single, uniform LR system, as discussed above.

---

[7] *See, e.g.*, 70 Fed. Reg. at 66131 (addressing comments that lawyers and law enforcement officers be excluded from NSPS "because of the nature of their work"); *id.* at 66178 (addressing comments that civilian mariners should be excluded from the LR system).

As the Court is aware, prior to NSPS, labor management relations between DoD and its unionized civilian employees have been governed by Chapter 71.  *See* 5 U.S.C. § 7701, *et seq.* Under Chapter 71, employees have a statutory right to engage in collective bargaining with respect to "conditions of employment."  5 U.S.C. § 7102(2).  The statute broadly defines the term "conditions of employment" to mean "personnel policies, practices, and matters . . . affecting working conditions" but it also specifically provides that the term does *not* include matters "specifically provided for by federal statute."  5 U.S.C. § 7103(a)(14)(C).  "The wages and fringe benefits of the overwhelming majority of Executive Branch employees are fixed by law, in accordance with the General Schedules of the Civil Service Act, *see* 5 U.S.C. § 5332, and are therefore eliminated from the definition of 'conditions of employment' by the third exception in § 7103(a)(14) . . . ."  *Fort Stewart*, 495 U.S. at 649.  However, this exception does not apply to the "minuscule minority of federal employees whose wages are exempted from the operation of the General Schedules."  *Id.*  Thus, under Chapter 71, pay and fringe benefits are negotiable "conditions of employment" for employees that are exempted from the General Schedule in the absence of some other statutory restriction.  *Id.*; *Dept. of the Army v. FLRA*, 914 F.2d 1291 (9th Cir. 1990).

Domestic school employees fall into this "minuscule minority," by operation of 10 U.S.C. § 2164, which allows for them to be exempted from the General Schedule.  *See* 10 U.S.C. § 2164(e)(2).  As a result, domestic school employees have historically bargained their pay.  *See* 10 U.S.C. § 2164 note.

Pursuant to Sections 9902(a) and (b), the Agencies here are authorized to establish a new human resources management system "notwithstanding any other provision" in Part III of Title 5, including 5 U.S.C. § 5332, the statute prescribing the General Schedules for federal employee wages,

and to create a new "pay-for-performance system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees." 5 U.S.C. § 9902(a) and (b)(6)(I). Upon implementation of the new system, employee pay would no longer be "specifically provided for by federal statute" and hence no longer within the scope of the exception under 5 U.S.C. § 7103(a)(14)(C). Nonetheless, the specific terms of section 9902 make clear that the new pay system is not subject to collective bargaining.

Section 9902(m)(7) provides that "Nothing in this section, including the authority provided to waive, modify, or otherwise affect provisions of law not listed in subsection (b) and (c) as nonwaivable, shall be construed to expand the scope of bargaining under chapter 71 or this subsection with respect to any provision of this title that may be waived, modified or otherwise affected under this section." 5 U.S.C. § 9902(m)(7). Under this provision, the Agencies' decision to waive and/or modify 5 U.S.C. § 5332 may not "expand the scope of bargaining under chapter 71" and hence cannot create a right to bargain with respect to pay where no such right existed under the prior scheme.

Plaintiff, however, claims that because school employees did have a right to bargain with respect to pay under the prior scheme, denying them that right under the NSPS HR system would not violate § 9902(m)(7), because it would not expand the scope of bargaining under Chapter 71. Because, they assert, compliance with § 9902(m)(7) is the only rationale for denying bargaining over pay under the NSPS HR system, the decision to do so with respect to them is arbitrary and capricious. *See* Pl. Mem. at 41-42.

Section 9902(m)(7), however, is not the sole rationale for not continuing the practice of bargaining pay with school employees. As the challenged regulation makes clear, the Agencies'

-23-

conclusion that employee pay is not subject to collective bargaining did not rest exclusively on

section 9902(m)(7).  Section 9901.305 provides:

> Pursuant to 5 U.S.C. § 9902(f)(4) and (m)(7), any pay program established under authority of this subpart is not subject to collective bargaining.  This bar on collective bargaining applies to all aspects of the pay program, including but not limited to coverage decisions, the design of pay structures, the setting and adjustment of pay levels, pay administration rules and policies, and administration procedures and arrangements.

70 Fed. Reg. 66195 (§ 9901.305).  Section 9902(f), which Plaintiff does not discuss, establishes

procedures to ensure the participation of employee representatives in the planning, development,

implementation, and adjustment of the NSPS, 5 U.S.C. § 9902(f), which is required to include a

"pay-for-performance evaluation system" and "an equitable method for appraising and compensating

employees." 5 U.S.C. § 9902(b)(6)(I).  Section 9902(f) does not provide for collective bargaining

with respect to the planning, development, implementation, and adjustment of NSPS.  Indeed, to the

contrary, it explicitly authorizes the Secretary of DoD to implement any or all parts of the NSPS,

including those portions of the system to which employees object "if the Secretary, in his discretion,

determines that further consultation and mediation is unlikely to produce agreement . . . ." *Id.*,

§ 9902(f)(1)(C)(ii).

Moreover, Congress plainly intended the procedures prescribed by section 9902(f) to apply

in lieu of any collective bargaining requirements under Chapter 71.  In that regard, section 9902(f)(4)

provides that: "The procedures under this subsection are the *exclusive* procedures for the

participation of employee representatives in the planning, development, implementation, or

adjustment of the [NSPS]." 5 U.S.C. § 9902(f)(4) (emphasis supplied).  The plain meaning of this

subsection compels the conclusion that Congress intended to displace any collective bargaining

requirement that might otherwise apply.  Ending the practice of bargaining domestic school employee pay is therefore mandated by the terms of 5 U.S.C. § 9902(f)(4), and defendants' compliance with the statute is neither arbitrary, nor capricious.  Even if there were some ambiguity in the statute, the Agencies' interpretation of §§ 9902(f)(4) and 9902(m), and consequent application of §§ 9901.305 and 9901.903 of the rule to school employees, is at the very least, a "permissible one," entitled to deference under *Chevron*.

Additionally, as discussed, both the domestic and overseas school employees are part of the Total Force that Congress intended to place under a single, unified labor relations system.  Giving special treatment to one or both of these groups would defeat this purpose and lead toward an inefficient patchwork system for labor relations.  Such a system would be inconsistent with the Congressional direction in 5 U.S.C. § 9902(m)(1) that the Agencies establish "a labor relations system [one system] to address the unique role that the Department's civilian workforce plays in supporting the Department's national security mission."  This section clearly recognizes that the scope and subjects of collective bargaining that previously existed with respect to DoD employees could, and would, be changed by the provisions of chapter 99 of Title 5.  And, as discussed above, even if there were some ambiguity in the statute, the Agencies' interpretation of their authority under §9902 to provide for a single scope of bargaining which excludes employee pay is at the very least, a "permissible one," entitled to deference under *Chevron*.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment should be denied,

defendants' motion to dismiss should be granted, and this action should be dismissed with prejudice.

Dated: January 23, 2006        Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_____/s/_____
SUSAN K. RUDY, D.C. Bar # 369112
JEFFREY M. SMITH, D.C. Bar # 467936
JONATHAN ZIMMERMAN, MA Bar # 654255
Attorneys, U.S. Department of Justice
20 Massachusetts Avenue, N.W., Room 7126
Washington, D.C.  20530
Telephone:  (202) 514-5751
Attorneys for Defendants