**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **FEDERAL EDUCATION ASSOCIATION, Inc.** | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:05CV02324 EGS |
| | : | |
| **DONALD H. RUMSFELD,** Secretary, | : | |
| United States Department of Defense, *et al.,* | : | |
| | : | |
| | : | |
| defendants. | : | |

_____

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**
_____

**Introduction**

This memorandum of points and authorities is filed in opposition to the

defendants' motion to dismiss and in reply to the defendants' opposition to the plaintiff's

motion for summary judgment.

Many of the justifications offered by the defendants for including dependent

school personnel in the NSPS were raised for the first time in their memorandum of

points and authorities, and were not the basis for the actual decision to include these

employees in the NSPS. As will be discussed herein, the Court cannot uphold the

defendants' actions based on such *post hoc* rationalizations.  The FEA has addressed why

the actual reasons for including dependent school personnel in the NSPS are contrary to law or arbitrary and capricious in the memorandum accompanying its motion for summary judgment (to which the Court's attention is directed). And while reference may be made to those arguments, the FEA will attempt to avoid repeating them here.

I.     **The FEA's claim is ripe. The "pay-for-performance" compensation system contained in the defendants' November 1 regulations is inherently inconsistent with the letter and purpose of the statute which created a separate personnel system for DOD domestic school personnel.**

The Secretary and Director claim that their "pay-for-performance" system is only "hypothetical" and that "it is not at all clear what form their pay system will take,"and therefore the FEA's challenge is not ripe.  Def. mem. at 10, 9. However, the final regulations promulgated by the defendants on November 1, 2005 are sufficiently specific to see the facial inconsistency between the challenged regulations and 10 U.S.C. § 2164. Under § 9901.342 of those regulations, domestic school personnel will be assigned to broad pay bands and pay advancement will depend upon the results of annual performance appraisals. 70 Fed. Reg. 66196-98.  In contrast, 10 U.S.C. § 2164 requires the Secretary to consider the pay practices of surrounding public school districts when setting school employees' compensation. These public school districts uniformly utilize a system that sets a specific salary rate (rather than a broad range) based on years of teaching experience and academic attainment. These school districts also peg pay advancement to longevity and the attainment of additional academic credentials, rather

2

than on perceived performance. The two pay systems are fundamentally different and irreconcilable.   There is *no way* that § 9901.342 can be applied to domestic school employees in a way that "could adequately incorporate the § 2164(e) factors" as the defendants claim. Def. mem. at 11.

The objective of the statute which created a separate personnel system for DOD domestic school personnel was to make "the personnel practices for instructional personnel be patterned after those usually encountered in the teaching profession rather than those which have been developed for the Federal service as a whole." S. Rep. No. 311, 89th Cong., 1st Sess,  1965 U.S.C.C.A.N. 1910, 1913. The "pay-for-performance" pay-band scheme contained in the NSPS human resources management system is completely antithetical to the "personnel practices for instructional personnel . . . patterned after those usually encountered in the teaching profession" as well as to the pay schedules in the neighboring school districts. As discussed more fully on pages 25-27 of the FEA's memorandum in support of its motion for summary judgment, more than 99 percent of public school teachers work in districts that employ a uniform salary scale that pay all teachers with the same credentials and experience the same salary, irrespective of "perceived performance." Richard Murname & David Cohen, *Merit Pay and the Evaluation Problem: Why Most Merit Pay Plans Fail and a Few Survive,* 56 HARV. EDUC. REV. 1, 2 (1986).

In their response to comments published with the final regulations, the defendants implicitly conceded that the pay-for-performance system was inconsistent with § 2164(e),

but rejected the FEA's demand that the domestic school employees be excluded because application of 10 U.S.C. § 2164(e) was ostensibly discretionary:

> Commentors questioned whether [section 9901.102 "Eligibility and coverage"] paragraph (f) could be used to cover educators employed by the DOD Education Activity in a NSPS pay system. Since the pay system for those educators employed overseas (Department of Defense Dependents Schools) is established under nondiscretionary statutory provisions in title 20, they are not eligible for coverage under an NSPS pay system. *However, the pay system for those educators employed in the Continental United States (Defense Domestic Elementary and Secondary Schools) is established under discretionary provisions in title 10. Therefore, they are eligible for coverage under an NSPS pay system.*

70 Fed. Reg. 66131 (emphasis added). But as explained in the FEA's summary judgment memorandum at 25, § 2164(e) is nondiscretionary.

The defendants now offer a different reason for including domestic school personnel in the NSPS Human Resources. They now concede that the § 2164(e) is *nondiscretionary* and that there are "pay requirements [that] § 2164 imposes." They write that § 2164 "require[s] that in setting salaries for Title 10 school employees, the Secretary must consider the salaries of comparable employees in local schools." Def. mem. at 11. However, the defendants now argue through counsel that domestic school personnel can be included in the HR system because the pay-for-performance system can ostensibly be reconciled with the requirements of 10 U.S.C. § 2164(e). The Court "cannot 'accept . . . counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself'." *Federal*

4

*Power Comm. v. Dougherty*, 417 U.S. 380, 397 (1974), *quoting Burlington Truck Lines,*

371 U.S. at 168-69 and *SEC v. Chenery Corp.*, 322 U.S. 194, 196 (1947). "[W]e cannot

affirm an agency's actions based on the *post hoc* rationale of its litigating position."

*American Bar Ass'n. v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005). "[W]e can uphold an

agency decision only on the basis of arguments and evidence provided by the

agency during the rulemaking proceedings." *Safe Food and Fertilizer v. EPA*, 365 F.3d 46,

49 (D.C. Cir. 2004).   As the Tenth Circuit explained in a recent decision:

> Because the arbitrary and capricious standard focuses on the
> rationality of an agency's decision making process rather than on the
> rationality of the actual decision, "[i]t is well-established that an agency's
> action must be upheld, if at all, on the basis articulated by the agency itself."
> *Motor Vehicle Mfrs.*, 463 U.S. at 50. Thus, the grounds upon which the
> agency acted must be clearly disclosed in, and sustained by, the record.
> *Olenhouse,* 42 F.3d at 1575. The agency must make plain its course of
> inquiry, its analysis and its reasoning. *Id*. After-the-fact rationalization by
> counsel in briefs or argument will not cure noncompliance by the agency
> with these principles. *Id*.

*Colorado Wild, Heartwood v. U. S. Forest Service*, __ F.3d.___, 2006 WL 122468, *5

(10th Cir. Jan. 18, 2006).

   The defendants do not dispute that Congress created separate personnel systems for

*both* domestic and overseas teachers.  Like overseas teachers, domestic school personnel

have already been statutorily cordoned off from DOD into their own personnel "enclave."

There is nothing in the language or legislative history of the NSPS that Congress intended

to supersede the statutes which created these separate personnel systems when it exempted

the remainder of DOD employees from the confines of Title 5. No provision of Title 10 was waived in 5 U.S.C. § 9902.

## II.     Section 351 guarantees DOD domestic school personnel the right to collectively bargain over pay.

Section 351of the National Defense Authorization Act for Fiscal Year 1995, (subsections (a) and (b) of which have been codified as 10 U.S.C. § 2164) does in fact guarantee domestic school personnel the right to collectively bargain over pay. Although phrased as a savings clause, subsection (c) (10 U.S.C.A. § 2164 note) evinced a Congressional intent that domestic school personnel should continue to collectively bargain over pay, a right they won in *Fort Stewart Schools v. FLRA*, 495 U.S. 641 (1990). A savings clause should be interpreted in a manner that effectuates Congressional intent. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 51 (1987).  The defendants read subsection (c) too narrowly and too literally. "[T]he intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989). "While the plain language of the statute is an important guide, 'manifest intent prevails over the letter.'" *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir.), *cert. denied*, 520 U.S.1746 (1997), *quoting In re Nofziger*, 925 F.2d 428, 434 (D.C. Cir. 1991).

The right to bargain over pay (using the pay practices in comparable school districts as a prime consideration) was part and parcel of the statutory scheme which Congress devised to make domestic teacher personnel practices similar to those in the public schools

6

- with whom DOD competes for personnel. The existence of subsection (c) is further proof that the two statutes are irreconcilable. As such, the more narrowly applicable statute remains in force. "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976); *accord Todd v. MSPB,* 55 F.3d 1574, 1578 ( Fed. Cir.1995) (discussing predecessor to 10 U.S.C. § 2164).

III.    **The defendants have failed to provide a reason why they have included domestic school personnel in the Human Resources System while the overseas teachers are excluded.**

Chapter 99 does not require that all employees who are eligible to be included in the Human Resources System need be included. The defendants may apply the HR system to "some or all of the organizational or functional units" of DOD. 5 U.S.C. § 9902(a). "[D]ifferential treatment of the domestic and overseas school employees" is *not* "mandated" as the defendants claim. Def. mem. at 16**.**

The defendants have provided no rationale for treating overseas and domestic school personnel differently other than a claim that they have a statutory right to do so. Even assuming that domestic school personnel may be included in the Human Resources System without offending 10 U.S.C. § 2164, the defendants have failed to provide a rationale for the exercise of that discretion. The exercise of an agency's discretion must be

based on some reason other than the mere possession of such discretion. "To borrow from

Chief Justice Marshall, an agency's discretionary choices are not left to its 'inclination, but

to its judgment; and its judgment is to be guided by sound legal principles.'" *MacMillian*

*Publishing Co. v. NLRB,* 194 F.3d 165, 168 (D.C. Cir. 1999), *quoting United States v.*

*Burr,* 25 F.Cas. 30, 35 (C.C.D.Va. 1807).

      Later in their memorandum, the defendants bemoan the suggestion that all

dependent school personnel be excluded from the NSPS Labor Relations System because

it would provide "special treatment" to a particular group of employees and result in an

"inefficient patchwork system."  However, the defendants have designed a Human

Resources System which treats employees who perform the same job differently

depending on whether they are assigned to domestic or overseas schools. Title 10 U.S.C. §

2164(e)(4) envisions that the Secretary will freely transfer employees from the domestic

dependents school system to the overseas schools and vice versa. A more inefficient and

patchwork human resources system could not be devised.

      The defendants have failed to address the fact that both the Overseas Teachers Pay

and Personnel Practices Act and 10 U.S.C. § 2164 were both enacted to address the same

problems facing individuals who situations are indistinguishable. Because these statutes

share the same purpose and apply to the same class of persons, they should be construed

and applied in *pari materia. Wachovia Bank v. Schmidt,* 388 F.3d 414, 423 (4th Cir. 2004),

*cert. granted*, 125 S.Ct. 2904 (2005); *FAIC Securities Inc. v. U.S.*, 768 F.2d 352, 363

(D.C. Cir. 1985);  *Firstar Bank N.A. v. Faul*, 253 F.3d 982, 996 (7th Cir. 2001); *In Re*

*Robinson*, 665 F.2d 166, 171 (7th 1981); *Buffalo Bills, Inc. v. United States*,  31 Fed.Cl. 794, 800 (1994).

**IV.     The inclusion of domestic school personnel in the HR system is arbitrary and capricious because it does not further any statutory purpose.**

The defendants need not undertake an individualized review of each DOD employee's relationship to national security before deciding whether to include him or her in the HR system. However, Chapter 99 does envision that the defendants would review groups or units of employees before deciding whether they should be included. As noted above, Congress envisioned that the defendants would implement a HR system for "*some or all of the organizational or functional units*" in DOD. 5 U.S.C. § 9902(a) (emphasis added).  In fact, the defendants reviewed the appropriateness of including numerous units of employees in the HR system before it published their final regulations. (See chart at 70 Fed. Reg. 66131-32).

In response to the FEA's comments, the defendants engaged in an affirmative (although superficial) analysis of the relationship between school personnel and national security before deciding to include teachers in the NSPS.  The defendants concluded that the educators' "contributions in teaching the children of our service men and women and the civilian employees who support them are absolutely critical to the successful accomplishment of the Department's national security mission." 70 Fed. Reg. 66178. The defendants cannot now defend the inclusion of school personnel in either the HR system or

LR system by arguing that they need not "evaluate the specific connection between national security and each type of employee" or that employees should be included or omitted "based in their proximity to national security responsibilities" or distance therefrom. Def. mem. at 17. The defendants already engaged in such an evaluation and its conclusions are what are being challenged in this case. As discussed above, the defendants' decision to include the teachers in the NSPS can be upheld solely on the basis on which the agency took its action, not on the basis of a *post hoc* rationalization first advanced in litigation.

Similarly, in their memorandum the defendants claim for the first time that domestic school personnel should be included in the HR system regardless of their "proximity" to national security responsibilities because of the "improved personnel management" the system ostensibly offers. Def. mem. at 18. However, this argument is wholly inapplicable to domestic school personnel because *they have already been exempted from most of the restrictions of the Title 5 personnel system* by 20 U.S.C. § 241 and subsequently 10 U.S.C. § 2164. They are *not* "laboring under a cumbersome, inefficient system designed for another century" nor does DOD need "greater personnel flexibility" with regard to domestic school personnel. Congress already provided that flexibility to DOD in the form of a special personnel statute for school employees.

**V.    The inclusion of overseas teachers and domestic school personnel in the NSPS labor relations system is arbitrary and capricious, as is the prohibition against bargaining over pay.**

The claim that school teachers are part of DOD's "total force" structure which "thinks and operates as a cohesive unit" is fantastical.  The domestic schools were not created because Congress "determined that there was a national security related need for them" but rather as social policy. They were created not to fight communists, terrorists or other foreign enemies, but rather to fight a domestic enemy - racial segregation.

Mere assertion of the claim that DOD school teachers  "are absolutely critical to the successful accomplishment of the Department's national security mission" does not make it so:

> In addition to requiring a reasoned basis for agency action, the "arbitrary or capricious" standard requires an agency's action to be supported by facts in the record. *Olenhouse,* 42 F.3d at 1575. Accordingly, agency action will be set aside as arbitrary unless it is supported by "substantial evidence" in the administrative record. *Id.*

*Colorado Wild, Heartwood v. U. S. Forest Service*, *supra.* The only "facts" in the record demonstrate that the domestic schools in particular have no relationship to DOD's ongoing national security mission. The domestic dependents schools were originally operated under the auspices of the former Commissioner of Education, rather than DOD. Most domestic dependents schools, which once numbered nearly a hundred, and which the defendants

claim to be critical to national security, have been closed.   A STUDY OF SCHOOLS SERVING

MILITARY FAMILIES at 2, 3, 85.

In its memorandum, the defendants for the first time claim that teachers and other

school personnel should be included in the labor relations system for administrative

convenience, and to avoid claims from others who might argue that they should be

excluded.[1]  Nowhere in the nearly 100 pages of justifications for the regulations and

response to comments did the defendants offer this as a basis for including teachers or any

other group in the NSPS labor relations system; this is yet another *post hoc* rationalization

which the Court must reject. As the defendants note, they did in fact consider claims by

several groups of employees that they should be excluded from the NSPS because of the

nature of their work. Def. mem. 21, n. 7.   Chapter 99 does not mandate uniformity of

treatment of all DOD employees. Section 9902(m)(8) provides that the Secretary may

determine whether to exclude certain bargaining units from the labor relations system.

The defendants cite nothing to support the claim that Congress intended that there be a

"uniform LR system." On the contrary, Chapter 99 clearly states that the system which the

defendants devise must be "flexible" rather than uniform. 5 U.S.C. § 9902(b).

---

[1] The defendants erroneously rely on *Nationsbank of Texas, N.A. v. United States*, 269 F.3d 1332, 1337 (Fed. Cir. 2001) for the proposition that "imposition of uniformity is a sufficient 'rational purpose' to support agency action." Def. mem. at 21. That case did *not* involve a review of the rationality of agency action. Rather it involved a constitutional challenge to a statute that imposed uniformity.

The defendants do not dispute that overseas teachers and domestic school personnel cannot be used interchangeably with military personnel to perform combat support roles, or to perform any duties other than to work in the schools. These employees are appointed under the authority of a unique statutes for the sole purpose of working in the schools. 20 U.S.C. § 901(1);10 U.S.C. § 2164(e)(2)(A),(B). Specific statutory authority was granted to the Secretary to transfer domestic school personnel to the overseas schools and vice versa, but no authority was granted to transfer overseas teachers or domestic school personnel to other assignments within DOD. 10 U.S.C. § 2164(e)(4).  The purpose of the flexible HR system and the truncated collective bargaining rights was to enable DOD to swiftly reassign civilian employees within and throughout the Department. "[T]he scope of bargaining is reduced in some areas, such as management rights, to enable the Department to better utilize its civilian workforce to support rapidly changing national security challenges, such as the Global War on Terrorism and supporting humanitarian assistance missions here and abroad . . ."  70 Fed. Reg. 66176. School personnel cannot be reassigned to these tasks and therefore this rationale for curtailing collective bargaining rights is wholly inapplicable to these educators.

The other reason that collective bargaining rights were curtailed by the regulations was to allow implementation of a new HR system. However, the defendants have already excluded the overseas teachers from the HR system, so there is no need to curtail their collective bargaining rights in order to implement such a system. And if the Court determines that domestic school personnel should be similarly excluded from the HR

13

system, there is no reason why they should not be allowed to continue to collectively

bargain over compensation.

## Conclusion

For the foregoing reasons, the defendants motion to dismiss should be denied and

summary judgment should be granted in favor of the Federal Education Association.

Respectfully submitted,

/s/
_____
RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, D.C. 20015
202-274-1812
DC Bar no. 291849

Attorney for the
Federal Education Association, Inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FEDERAL EDUCATION ASSOCIATION, Inc.** :
                              :
               plaintiff,           :
                              :
     v.                              :
                              :       Case No. 1:05CV02324 EGS
                              :
**DONALD H. RUMSFELD,** Secretary,    :
United States Department of Defense, *et al.,*   :
                              :
                              :
            defendants.        :

## ORDER

Upon consideration of Defendants' Motion to Dismiss, as well as Plaintiff's Motion for Summary Judgment, the Oppositions and Replies thereto, and the Court being fully advised, it is this _____ day of _____, 2006 hereby

ORDERED that the Defendants' Motion to Dismiss is DENIED; and it is further

ORDERED that the Plaintiff's Motion for Summary Judgement is GRANTED; and it is hereby further

ORDERED that the Clerk shall enter judgment in favor of the Plaintiff and against the Defendants; and it is hereby further

DECLARED:

1

i.      that the Secretary and the Director violated 10 U.S.C. § 2164 by including DOD domestic school personnel in both the NSPS human resources management system and the NSPS labor relations system;

ii.      that the Secretary and the Director violated Section 351(c) of the National Defense Authorization Act for Fiscal Year 1995, 10 U.S.C. § 2164 note, by denying DOD domestic school personnel the right "to negotiate or bargain collectively with the Secretary with respect to wages, hours, and other terms and conditions of employment;"

iii.      that section 9901.102(f) of the final regulations exceeds the Secretary's statutory authority;

iv.      that inclusion of the DOD domestic school personnel in the NSPS human resources management system is arbitrary, capricious and an abuse of discretion;

v.      that inclusion of the DOD overseas educators and DOD domestic school personnel in the NSPS labor relations system is arbitrary, capricious and an abuse of discretion; and

vi.      that denying domestic dependent school personnel the right to continue to collectively bargain over pay, and for denying the overseas educators the right to continue to collectively bargain over extra duty compensation is arbitrary, capricious and an abuse of discretion; and it is hereby further

ORDERED that the Secretary of Defense and the Director of the U.S. Office of Personnel Management, their agents, subordinates and employees are ENJOINED from

2

including DOD overseas educators and DOD domestic school personnel in any aspect of

the National Security Personnel System, and from enforcing or implementing any

provision of the NSPS regulations against them or against the Federal Education

Association, Inc.


_____

United States District Judge


the clerk shall serve:


Richard J. Hirn
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015


Susan Rudy
Jeffrey M. Smith
Jonathan Zimmermann
Attorneys, U.S. Department of Justice
20 Massachusetts Ave, N.W.
Room 7126
Washington, DC 20530