# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL EDUCATION ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:05CV02324 EGS |
| | ) |
| DONALD RUMSFELD, SECRETARY OF DEFENSE, et al., | ) ) ) |
| Defendants. | ) ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

                                      PETER D. KEISLER
                                      Assistant Attorney General

                                      KENNETH L. WAINSTEIN
Of Counsel:                           United States Attorney

STEWART ALY
MICHAEL REHEUSER             SUSAN K. RUDY, D.C. Bar # 369112
HELEN SULLIVAN               JEFFREY M. SMITH, D.C. Bar # 467936
Attorneys                            JONATHAN ZIMMERMAN, MA Bar # 654255
U.S. Department of Defense        Attorneys, U.S. Department of Justice
                                      20 Massachusetts Avenue, N.W.,
STEVEN ABOW                   Room 7126
DAVID SCHOLL                 Washington, D.C.  20530
ROBIN RICHARDSON          Telephone:  (202) 514-5751
Attorneys                            Attorneys for Defendants
Office of Personnel Management

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  Plaintiff's Challenge to the Inclusion of Domestic School Employees in the NSPS HR
    System Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Plaintiff's Challenge Is Not Ripe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Even If Plaintiff's Argument Were Ripe, It Fails To State a Claim . . . . . . . . . . 4

II. Plaintiff's Argument that the § 2164 Savings Provision Prohibits Inclusion of the
    Domestic School Employees Fails To State a Claim on which Relief May Be
    Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR
     System while Overseas School Employees Are Excluded Is Arbitrary and Capricious
     Fails To State a Claim on which Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . 9

IV. Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR
    System Is Arbitrary and Capricious and an Abuse of Discretion Because of the Domestic
    School Employees' Relationship to National Security Fails To State a Claim on which
    Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.  Plaintiff's Contention that the Inclusion of the Domestic and Overseas School Employees
    in the NSPS Labor Relations System Is Arbitrary and Capricious and an Abuse of
    Discretion Fails To State a Claim on which Relief May Be Granted . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## INTRODUCTION

Plaintiff's Opposition to Motion to Dismiss and Reply ("Plaintiff's Opp.") merely restates the same discredited arguments as its opening brief, while ignoring – and imploring the Court to ignore – the controlling statutory language of 5 U.S.C. § 9902 and 10 U.S.C. § 2164. The Department of Defense ("DoD") and the Office of Personnel Management ("OPM") (collectively, "the Agencies") have followed the law, implemented Congressional intent, and acted rationally.

Plaintiff's contention that the Agencies have violated 10 U.S.C. § 2164 is without merit because the Agencies have not yet implemented any new pay plan for the domestic school employees (and, thus, Plaintiff's claim is not ripe), and the Agencies can adopt a plan that meets both 5 U.S.C. § 9902's requirement "to better link individual pay to performance, and provide an equitable method for appraising and compensating employees" and 10 U.S.C. § 2164's direction that the Secretary "consider" the compensation of certain comparable employees. The Agencies have not violated § 2164's "savings clause," because that clause provides only that § 2164 itself kept the status quo regarding bargaining, and does not apply to later Congressional enactments.

Plaintiff's contention that the Agencies have acted arbitrarily and capriciously is similarly without merit. Consistent with clear Congressional intent, the Agencies have applied both the human resources management ("HR") system and the labor relations ("LR") system as broadly and uniformly as possible. The overseas school employees have been excluded from the HR system because including them would be inconsistent with 20 U.S.C. § 903. The domestic school employees are included in the HR system, which is intended, *inter alia*, to improve personnel management of "all occupational categories," 70 Fed. Reg. 66116, 66131 (Nov. 1, 2005), because they are not subject to § 903. Both groups have been included in the LR system because they are

among the "all bargaining units," 5 U.S.C. § 9902(m)(8), that Congress intended be included in the single LR system Congress authorized for DoD's civilian work force.

Because Plaintiff's Complaint fails to state a claim on which relief may be granted, this action must be dismissed.

## ARGUMENT

I. **Plaintiff's Challenge to the Inclusion of Domestic School Employees in the NSPS HR System Should Be Dismissed**

   A. **Plaintiff's Challenge Is Not Ripe**

To determine whether administrative action is ripe for judicial review courts "evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003). "[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Nat'l Park Hospitality Ass'n,* 538 U.S. at 808 (2003) (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

As Defendants explained in their motion to dismiss and opposition to Plaintiff's motion for summary judgment, this claim is not yet ripe because the details of the NSPS performance pay system are not yet known. *See* Defs' Opening Mem. at 8-10. Plaintiff's contention that the NSPS HR system cannot account for the § 2164(e) factors is groundless. For example, the performance pay system applied to domestic school employees could set the base of each pay band at a level commensurate to the pay employees currently receive under § 2164. Employees could then be

rewarded for superior performance by moving up within those pay bands. A similar system was cited as an example of a successful merit pay system used in some public schools in one of Plaintiff's own exhibits. *See* Murane, Richard J. and Cohen, David K., *Merit Pay and the Evaluation Problem: Why Most Merit Pay Plans Fail and A Few Survive*, 56 Harv. Educ. Rev. 1, 13 (1986).

Plaintiff asks the Court to ignore the possibility that a performance pay system could account for the § 2164(e) factors in conducting the ripeness analysis because these are supposedly "counsel's post hoc rationalizations for agency action. . ." Pl. Opp. at 4 (quotation marks and citation omitted). This argument is irrelevant to a ripeness analysis. The fact that the details of the NSPS performance pay system applicable to Plaintiff's members have not yet been decided, and that those details could account for the § 2164(e) factors, is dispositive of the Court's ripeness determination. There is simply no way for the Court to assess whether the performance pay system applied to domestic school employees will conflict with § 2164(e) until the details of the performance pay system are finalized. Until such a time, Plaintiff's claims are not ripe.

Plaintiff also alleges that their claim is ripe because performance pay and § 2164 are "fundamentally different and irreconcilable." Pl. Opp. at 3. According to Plaintiff, § 2164 was intended to make the pay of domestic school employees comparable to that of their public school counterparts in all ways. Because most public schools, Plaintiff claims, choose not to use merit pay systems, the NSPS performance pay system is facially inconsistent with § 2164. *See* Pl. Opp. at 2-3.

Despite Plaintiff's claim, there is no facial inconsistency between performance pay and § 2164, and Plaintiff's claim is therefore not ripe. Nothing in § 2164 requires that domestic school employees be paid in exactly the same *way* as their public school counterparts. Nor does § 2164(e) require that domestic school employees be paid exactly the same amount as their public school

3

counterparts. Section 2164 requires only that the Secretary "consider" the pay of public school counterparts in setting domestic school employee's pay. *See* 10 U.S.C. § 2164(e). As explained, the Secretary could consider the pay of public school employees in setting the pay bands and therefore reconcile the two systems. There is no facial conflict between § 2164(e) and the NSPS performance pay system.[1]

### B.  Even If Plaintiff's Argument Were Ripe, It Fails To State a Claim

Even if Plaintiff's argument concerning the performance pay system were ripe, it fails to state a claim because there is no facial inconsistency between the NSPS HR system and § 2164. "To prevail in such a facial challenge, [plaintiff] 'must establish that no set of circumstances exist under which the [regulation] would be valid.'" *Reno v. Flores*, 507 U.S. 292, 301 (1993) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). At this time the details of the NSPS performance pay system are unknown. Therefore, the only way in which the NSPS HR system could, at this time, violate § 2164, as Plaintiff claims, is if the NSPS HR system were facially inconsistent with the terms of § 2164. As Defendants have explained, there is no facial inconsistency between the two; the NSPS performance pay system is broad enough to account for the § 2164(e) factors in a way that would not violate the terms of that statute. Section 2164(e) requires only that the Secretary "consider" the pay of comparable public school employees in setting the pay of domestic school employees and does not in any way preclude the use of a performance pay system. The only relevant requirement imposed by 5 U.S.C. § 9902 is that the NSPS contain: "[a] pay-for-performance

---

[1] Additionally, the only support that Plaintiff offers for the claim that "more than 99 percent of public school teachers work in districts that employ a uniform salary scale that pay all teachers with the same credentials and experience the same salary. . .," Pl. Opp. at 3, is a rather dated *Harvard Education Review* article from 1986.

evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees." *Id.*, § 9902(b)(6)(I). The details of the system are left to the Secretary's discretion. There is more than enough flexibility in a performance pay system to account for the § 2164(e) factors, should it be necessary to do so.

Plaintiff additionally claims that § 2164(e) is mandatory, in the sense that the Secretary must set the pay of domestic school employees on the basis of the § 2164(e) factors, and that the statute is therefore facially inconsistent with the NSPS regulations which include a performance pay system. *See* Pl. Opp. at 4. Plaintiff alleges that the Agencies concede this point in their motion to dismiss and opposition to Plaintiff's motion for summary judgment. *See id.* Defendants have conceded no such thing because Plaintiff's argument is incorrect. The statement Plaintiff cites for this claim, made in Defendants' opening memorandum, is that the: "§ 2164(e) factors. . .require that in setting salaries for Title 10 school employees, the Secretary must consider the salaries of comparable employees in local schools." Defs' Mot. to Dismiss and Opp. to Pl's Mot. for Sum. Judgment at 11. This statement indicates only that the terms of § 2164 require the Secretary to consider comparable public school salaries in setting the pay of domestic school employees, when they have been appointed pursuant to the authority granted by § 2164. Moreover, the appointment of domestic school personnel through Title 10 is itself discretionary, *see* 10 U.S.C. § 2164(a)(1) ("the Secretary *may* enter into arrangements to provide for the elementary or secondary education of the dependents of such members of the armed forces and, to the extent authorized in subsection (c), the dependents of such civilian employees.") (emphasis added), and the Secretary could presumably appoint domestic school personnel under some other authority, such as Title 5, which would not necessitate

5

adherence to the terms of § 2164 at all.[2] But even when the Secretary appoints domestic school employees under title 10, section 2164(e) requires only that the Secretary "consider" the comparable salaries of public school employees in setting pay. The statute plainly does not mandate that the Secretary adopt "pay practices," including seniority and academic attainment criteria, that are identical to those adopted in public school systems. There is no facial inconsistency between considering comparable salaries and then paying domestic school employees under a performance pay system that has been designed with consideration of those comparable salaries in mind. In short, there is nothing "mandatory" about § 2164 that would render it facially inconsistent with the NSPS performance pay system. Accordingly, Plaintiff has failed to state a claim.

**II.     Plaintiff's Argument that the § 2164 Savings Provision Prohibits Inclusion of the Domestic School Employees Fails To State a Claim on which Relief May Be Granted**

Despite the clearly limited scope of the savings provision at 10 U.S.C. § 2164 note, Plaintiff continues to claim that the savings provision "guarantee[s] domestic school personnel the right to collectively bargain over pay," Pl. Opp. at 6, and is therefore facially inconsistent with the NSPS's bar to the collective bargaining of pay. As Defendants previously explained, *see* Defs' Mot. to

---

[2]Plaintiff continues to misunderstand a reference to the discretionary nature of title 10 in the Preamble, which states: "the pay system for those educators employed in the Continental United States. . .is established under discretionary provisions in title 10. Therefore, they are eligible for coverage under an NSPS pay system." 70 Fed. Reg. 66131. Plaintiff reads this statement as suggesting that adherence to the § 2164(e) factors is discretionary. The statement, however, is a reference to the fact that authority to appoint domestic school employees and to set their salaries, pursuant to § 2164 is discretionary. As the statute holds: "the Secretary *may*, without regard to the provisions of any other law relating to the number, classification or compensation of employees– (a) establish positions for civilian employees in schools established under this section; (b) appoint individuals to such positions; and (c) fix the compensation of such individuals for service in such positions." 10 U.S.C. § 2164(e)(2) (emphasis added). Once the Secretary acts under that discretionary authority, however, he must consider the factors laid out in § 2164(e)(3)(A) in setting salaries.

Dismiss and Opp. to Pl. Mot. for Sum Judgment at 12-14, this reading of the § 2164 savings provision is far too broad. The savings provision is clearly limited by its own terms. It states:

> *Nothing in section 2164 of title 10, United States Code* [this section], as added by subsection (a), shall be construed as affecting the rights in existence on the date of the enactment of this Act [Oct. 5, 1994] of an employee of any school established under such section (or any other provision of law enacted before the date of enactment of this Act that established a similar school) to negotiate or bargain collectively with the Secretary with respect to wages, hours, and other terms and conditions of employment.

10 U.S.C. § 2164 note (emphasis supplied). That the savings clause is limited to assuring only that 10 U.S.C. § 2164 itself not affect any preexisting collective bargaining rights could not be more clear. And because of this limitation, the savings provision can continue to be given effect even if Plaintiff's members are moved to the NSPS HR system and precluded from bargaining pay, because that preclusion would stem from the NSPS, not from 10 U.S.C. § 2164. Therefore, nothing in § 2164 would be read to limit the collective bargaining rights Plaintiff's members enjoyed at the time of § 2164's passage, and the savings clause would not be violated.

Plaintiff, however, continues to claim that the savings provision and the NSPS are facially inconsistent because the savings provision is broadly prospective, acting to preclude any future legislation from revoking the collective bargaining rights Plaintiff's members held in 1994, when § 2164 was enacted. Plaintiff says Defendants' reading of the plain language of the savings provision is "too narrow[]" and "too literal[]." Pl. Opp. at 6. Rather than pay heed to the plain meaning of the language in this unambiguous savings provision, Plaintiff counsels the Court to focus instead on: "[t]he intention of the drafters, rather than the strict language. . ." Pl. Opp. at 6 (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)). And though Plaintiff fails to cite any legislative history at all, Plaintiff assures the Court that the savings provision "evinced

7

a Congressional intent that domestic school personnel should continue to collectively bargain over pay . . . ." Pl. Opp. 6.

Plaintiff's preferred approach to statutory construction is fundamentally at odds with the approach taken by this circuit. As the D.C. Circuit recently noted, a court's statutory construction "analysis begins, as always, with the text of the statute." *Chao v. Day*, ___ F.3d ___, 2006 WL 162920 at *2 (D.C. Cir. 2006) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). "Where . . . it is plain and unambiguous, our analysis ends with the text as well." *Day*, 2006 WL 162920 at *2 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). The text of the § 2164 savings provision could not be more clear, and the Court should accordingly end its analysis with the plain text of the provision itself.[3]

Even if the Court were to reach the issue of legislative intent, as Plaintiff urges, Plaintiff's claim still fails, as Plaintiff has offered no evidence of legislative intent other than 10 U.S.C. § 2164 itself, which reflects only a Congressional intent to assure that 10 U.S.C. § 2164 does not affect any collective bargaining rights enjoyed by school employees at the time of its passage. There is nothing in the record to suggest that in passing the § 2164 savings provision, Congress intended to forestall any future legislation from altering the 1994 collective bargaining rights of school employees. Even

---

[3]Nor has Plaintiff offered persuasive case law. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 51 (1987); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989); and *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir. 1997), all stand for the unremarkable principle that "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair Enterprises, Inc.* 489 U.S. at 242. Here, the meaning of the § 2164 savings provision is clear, and giving effect to the provision's plain meaning would produce no adverse consequence. In fact, applying Plaintiff's sweeping and prospective reading of the savings provision is what would produce a result demonstrably at odds with Congress' intent, expressed clearly in the very first words of the savings provision: "Nothing in section 2164 of title 10. . .shall be construed."

read in the broader context of 10 U.S.C. § 2164 as a whole, there is nothing to suggest that in 1994 Congress would have intended the savings clause to apply prospectively to all future legislation. It simply is not in the statute.

### III. Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR System while Overseas School Employees Are Excluded Is Arbitrary and Capricious Fails To State a Claim on which Relief May Be Granted

The Agencies have identified the domestic school employees as eligible for placement in the HR system and have identified the overseas school employees as being excluded from the HR system because the two groups are governed by different statutory requirements. 70 Fed. Reg. at 66131. The Agencies determined that "the flexible systems we are authorizing can be applied successfully to all occupational categories." *Id.* As a result, the Agencies have included all employees, except where inclusion would be inconsistent with a statutory provision outside of Title 5. *See id.* As discussed in Defendants' opening memorandum, inclusion of the overseas school employees would conflict with 20 U.S.C. § 903, while inclusion of the domestic school employees is consistent with 10 U.S.C. § 2164. Def. Opening Mem. at 15-16. This is a more than sufficient rational basis under the APA. *See Am. Trucking Ass'ns, Inc. v. EPA*, 283 F.3d 355, 362 (D.C. Cir. 2002) ("[W]e presume the validity of agency action as long as a rational basis for it is presented." (quotation omitted)).

While Plaintiff contends, without citation, that domestic and overseas school employees face "situations [that] are indistinguishable," Pl. Opp. at 8, Congress has decided otherwise. Congress has determined that overseas school employees *must* be appointed pursuant to 20 U.S.C. § 903 and their compensation must be set based on a nondiscretionary formula set forth in statute. Def. Opening Br. at 15. By contrast, Congress has determined that domestic school employees *may* (but

9

need not be) appointed pursuant to 10 U.S.C. § 2164, and if they are so appointed, the Secretary is authorized to exercise discretion in setting their compensation, after considering certain factors. *Id.* Thus, Congress has mandated differential treatment of the domestic and overseas school employees.

Indeed, domestic and overseas school employees have long been treated differently with regard to the setting of compensation (*e.g.*, domestic employees may collectively bargain their pay while overseas employees may not), and because of the different applicable statutes, they will continue to be treated differently with regard to setting of compensation, regardless of whether the domestic school employees are placed in the HR system. Overseas school employees' pay will continue to be set by statutory formula while domestic school employees' pay will not. If this distinction is arbitrary, it is the result of Congress' determination, not of any decision by the Agencies.

**IV.    Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR System Is Arbitrary and Capricious and an Abuse of Discretion Because of the Domestic School Employees' Relationship to National Security Fails To State a Claim on which Relief May Be Granted**

In their opening memorandum, the Agencies demonstrated that Plaintiff's contention that including the domestic school employees is arbitrary and capricious lacks merit and fails to state a claim on which relief may be granted. Def. Opening Mem. at 16-19. In response, Plaintiff ignores the Agencies' analysis of the relevant statutory language, legislative history, and the agency decision-making process, instead responding with a series of incorrect statements.

First, Plaintiff's contention that the Agencies included domestic school personnel in the HR system after "an affirmative . . . analysis of the relationship between school personnel and national security" is in error. Pl. Opp. at 9. The analysis that Plaintiff quotes is in the Agencies' discussion

of the LR system authorized by 9902(m), not the HR system authorized by 9902(a). Indeed, as Plaintiff's Opposition does not dispute, the statutory provisions authorizing the HR system (*see, e.g.*, 5 U.S.C. § 9902(a)-(b)) do not require any particularized national security review. Def. Opening Mem. at 17-18.

Plaintiff is similarly incorrect when it contends that the Agencies "reviewed the appropriateness of including numerous units or employees in the HR system." Pl. Mem. at 9. In fact, the Agencies reviewed the *lawfulness* of including certain groups within the HR system. 70 Fed. Reg. at 66131-32. With regard to the "appropriateness" of including individual categories of employees, the Agencies concluded that the HR system "can be applied successfully to *all occupational categories*." *Id.* at 66131 (emphasis supplied).

Plaintiff is also mistaken when it contends that domestic school employees "have already been exempted from most of the restrictions of the Title 5 personnel system by . . . 10 U.S.C. § 2164." Pl. Opp. at 10 (emphasis omitted).[4] Notably, this assertion directly contradicts Plaintiff's own opening brief which asserts that "current law pertaining to domestic school personnel only permits the disregard of laws relating to the number, classification or compensation of employees and not all the provisions of Title 5 generally applicable to the Federal workforce." Pl. Opening Mem. at 27 (quoting in part *Stewart v. Dep't of Defense*, 82 M.S.P.R. 649, 652 (1999)) (quotation

---

[4] Plaintiff does not dispute that improved personnel management is one goal of the HR system. *See* Def. Opening Mem. at 18-19. The regulations themselves state that the "guiding principles for establishing these requirements are to put mission first; respect the individual; protect rights guaranteed by law . . . ; value talent, performance, leadership, and commitment to public service; be flexible, understandable, credible, responsive, and executable; ensure accountability at all levels; balance human resources system interoperability with unique mission requirements; and be competitive and cost effective." 5 C.F.R. § 9901.101(b)(1). These guiding principles are as applicable to DoD's schools and their employees as to other civilian employees.

and alteration omitted). It is 5 U.S.C. § 9902 that allows for the contemporary personnel management features such as the "more robust performance management system," the "flexibility necessary to streamline the hiring process," and "a reduction in force system that places more emphasis on performance" that are contained in the NSPS HR system. 70 Fed. Reg. at 66119-20. Thus, the Agencies' decision-making process clearly evinces a rational basis for including the domestic school employees in the newly-developed, contemporary and flexible HR system. *See Am. Trucking Ass'ns*, 283 F.3d at 362 (courts apply a "highly deferential standard of review" to claims brought pursuant to the APA).

V.  **Plaintiff's Contention that the Inclusion of the Domestic and Overseas School Employees in the NSPS Labor Relations System Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted**

Like its argument in Part IV of its opposition, Plaintiff's argument in Part V almost completely ignores the applicable statutory language of Section 9902. As discussed in Defendants' Opening Memorandum, that statutory language anticipates that the LR system is to be binding on "all bargaining units" and "all employee representatives of such units." Def. Opening Mem. at 19-21; 5 U.S.C. § 9902(m)(8).

Moreover, Plaintiff's discussion of the role of DoD's school employees is both incomplete and irrelevant to the legal issues here. While the scourge of segregation did create the need for some of DoD's schools, it was not the only reason for such schools. Some domestic schools were established because local educational agencies did not provide "an appropriate educational program," 10 U.S.C. § 2164(b)(1)(B), due to unlawful segregation.[5] Others (*i.e.*, those in Puerto Rico and

---

[5] While Plaintiff calls this "social policy," it is, in fact, also essential from a national security perspective for DoD to provide adequate educational opportunity for the dependents of military personnel. DoD could hardly expect to keep up either recruiting or troop morale if

Guam) were established because the local schools were not "conducted in the English language." 10 U.S.C. § 2164(b)(2)(C). Similarly, the overseas schools were established "to provide a free public education through secondary school for dependents in overseas areas" where troop deployments are necessary and American public schools are unavailable. 20 U.S.C. § 921(a).[6]

But whatever the reason that a particular school is needed, the purpose of the schools and the school employees is to provide needed support to the troops. Where an appropriate education is otherwise unavailable to service members' dependents, DoD must provide one. Indeed, the military support role provided by the teachers who teach service members children, whether in Korea, Guam, West Point, or elsewhere, is at least as direct as the role played by many other civilian employees, such as lawyers, commissary workers, janitors, and secretaries. It is the total civilian workforce, made up of these and other workers, that supports the military mission, and it is this total force that Congress intended to include within the single LR system authorized by Section 9902(m). *See* Def. Opening Mem. at 19-20.

As Plaintiff has not disputed, the requirement that Plaintiff attempts to conjure – that the Agencies must conduct an analysis of the relationship between each specific group of employees and national security before implementing the LR system – would plunge the Agencies, the Court, and the unions into a morass of bureaucracy and litigation (perhaps even lasting past November 2009 when authority for the LR system sunsets, *see* 5 U.S.C. § 9902(m)(9)) and leave DoD with an

---

service members' children were subject to the evils and indignity of segregation.

[6] As Plaintiff points out, under current law, under some circumstances, employees can be shifted between domestic and overseas schools, *see* Pl. Opp. at 8, although the authority is more limited than Plaintiff's imply. *See* 10 U.S.C. § 2164(e)(4) (transfer authority is limited to employees providing administrative, logistical, and personnel services).

inefficient patchwork of different labor systems. Def. Opening Mem. at 20-21. This is clearly not what Congress intended. *See id.* The Agencies' determination that the school employees, like other support employees, "are absolutely critical to the successful accomplishment of the Department's national security mission," and thus should be included, along with all other eligible employees, in the LR system, 70 Fed. Reg. at 66178, effectuates Congressional intent, is clearly rational, and easily surpasses the APA's "highly deferential standard of review," *Am. Trucking Ass'ns*, 283 F.3d at 362.

Finally, as Plaintiff's opposition concedes, the fact that the domestic school employees are included in the HR system presents an independent rational reason to include them in the LR system. Pl. Opp. at 13 (one purpose of the LR system is "to allow implementation of a new HR system").

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' opening memorandum, Plaintiff's motion for summary judgment should be denied, defendants' motion to dismiss should be granted, and this action should be dismissed with prejudice.

Dated: February 3, 2006            Respectfully submitted,

                                                PETER D. KEISLER
                                                Assistant Attorney General

                                                KENNETH L. WAINSTEIN
                                                United States Attorney

                                                                     /s/
                                                SUSAN K. RUDY, D.C. Bar # 369112
                                                JEFFREY M. SMITH, D.C. Bar # 467936
                                                JONATHAN ZIMMERMAN, MA Bar # 654255
                                                Attorneys, U.S. Department of Justice
                                                20 Massachusetts Avenue, N.W., Room 7126
                                                Washington, D.C. 20530
                                                Telephone: (202) 514-5751
                                                Attorneys for Defendants