# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL EDUCATION )
  ASSOCIATION, INC., )
                            )
             Plaintiff, )
     v. ) Case No. 1:05CV02324 EGS
                            )
ROBERT M. GATES, SECRETARY OF )
  DEFENSE, et al., )
                            )
            Defendants. )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

Of Counsel:

MICHAEL REHEUSER         SUSAN K. RUDY, D.C. Bar # 369112
HELEN SULLIVAN           JEFFREY M. SMITH, D.C. Bar # 467936
Attorneys                   JONATHAN ZIMMERMAN, MA Bar # 654255
U.S. Department of Defense   Attorneys, U.S. Department of Justice
                         20 Massachusetts Avenue, N.W.,
STEVEN ABOW             Room 7144
DAVID SCHOLL            Washington, D.C.  20530
ROBIN RICHARDSON      Telephone:  (202) 514-5751
Attorneys                   Attorneys for Defendants
Office of Personnel Management

Defendants hereby Move to Dismiss Plaintiff's Complaint and Oppose Plaintiffs' Motion for Summary Judgment in this Consolidated Memorandum.

## PRELIMINARY STATEMENT

In November 2003, responding to the need for a more "flexible and responsive personnel system for the civilian employees of the Department of Defense," H.R. Conf. Rpt. 108-354, at 759 (Nov. 7, 2003), Congress granted discretion to the Secretary of Defense ("Secretary") and the Director of the Office of Personnel Management ("Director" and "OPM" respectively), to remake the human resources management ("HR") and labor relations ("LR") systems governing civilian employees at the Department of Defense ("DoD").  Recognizing that the civilian employees who will operate under these new systems play a crucial role in supporting our nation's national security, the authority granted by Congress was expansive, permitting the Secretary and Director to apply the HR system to "some or all of the organizational or functional units of the [DoD]," 5 U.S.C. § 9902(a), and to apply the LR system to "all bargaining units within the Department of Defense, all employee representatives of such units, and the Department of Defense and its subcomponents," 5 U.S.C. § 9902(m)(8).  As the D.C. Circuit has recently noted, this legislation "sets out a new labor relations framework for Department of Defense employees."  *American Federation of Government Employees v. Gates*, 486 F.3d 1316, 1319 (D.C. Cir. 2007), *rehearing en banc denied*, (Aug 10, 2007) ("*AFGE*").[1]

These DoD employees are all part of a cohesive total force, one which operates as a single

---

[1] *AFGE* upheld the National Security Personnel System as a valid exercise of the Agencies' authority pursuant to 5 U.S.C. § 9902.  *Id.* at 1326-27.  Plaintiff's challenge is thus limited to whether their membership–domestic and overseas school employees–have some legal right to be exempted from inclusion in one or more parts of the System.

unit providing crucial support to the nation's military.  Plaintiff, a labor union that claims to represent approximately 8,000 (Compl. ¶¶ 8-9) of the 700,000 civilian employees employed by DoD, however, seeks to exclude its members and bargaining units from the Department-wide HR and LR systems authorized by Congress.  Plaintiff's claims are based on purported statutory requirements that simply do not exist.  Moreover, the compartmentalized, individualized review that Plaintiff would require DoD to conduct before placing a group of employees within the Department-wide systems would bring the personnel reform Congress authorized to a standstill, beget years of litigation over which employees have what role in national security, and leave DoD with a patchwork personnel system that would be conducive neither to managerial efficiency nor national security.  This is contrary to the clear Congressional intent expressed in 5 U.S.C. § 9902.

Plaintiff's Complaint brings three causes of action.  *See* Compl. ¶¶ 35-43.  In its Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl's Mem."), however, Plaintiff argue six separate legal claims.  *See* Pl's Mem., at 23-40.  However denominated, Plaintiff's contentions are without merit.

As demonstrated below, Plaintiff's contention that placing the domestic school employees in the HR system violates 10 U.S.C. § 2164 (Compl. ¶ 37) is not ripe and, in any event, lacks merit because there is no conflict between Section 2164 and the regulations promulgated by the Agencies.

Plaintiff's contention that placing the domestic school employees in the LR system violates 10 U.S.C. § 2164 (Compl. ¶ 40) is similarly without merit, because Section 2164 does not create or ensure collective bargaining procedures.

Placing the domestic school employees in the HR system, while excluding the overseas school employees from the HR system (*see* Compl. ¶ 39), is not arbitrary and capricious because the two groups are governed by different statutes with different terms.  The domestic school employees are statutorily eligible for the HR system while the overseas school employees are not.

Plaintiff's contention that placing the domestic school employees in the HR system is arbitrary and capricious because they allegedly are "not involved in national security work" (Compl. ¶ 38) is similarly without merit.  The governing statute permits the Agencies to include as many as "all" DoD civilian employees; there is no requirement for an employee group by employee group review; and the HR system promotes improved personnel management as well as national security.

Placing school employees in the LR system is not arbitrary and capricious (*see* Compl. ¶ 41) as the statute clearly contemplates that the LR system will encompass "all bargaining units within the Department of Defense," and the school employees are part of the total force support for the military.

Finally, Plaintiff's contention that it is arbitrary and capricious to decline to give the school employees an exemption from a key provision of the LR system prohibiting the collective bargaining of compensation (Compl. ¶ 43) is without merit and squarely foreclosed by the D.C. Circuit's decision in *AFGE*.

In short, the Secretary of Defense and the Director of OPM (the "Agencies") have properly followed the law in creating a human resource management system and a labor relations system for DoD's civilian employees, including the school employees represented by Plaintiff. And, the Agencies' decisions easily meet the "quite deferential" standard of the Administrative

Procedures Act ("APA").  *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997).

Plaintiff's Complaint fails to state a claim upon which relief may be granted, and thus, should be

dismissed.

## STATUTORY AND REGULATORY BACKGROUND

### I.    The National Defense Authorization Act

As part of the National Defense Authorization Act for Fiscal Year 2004 ("NDAA"), Pub.

L. No. 108-136, 117 Stat. 1392 (Nov. 24, 2003), Congress, being "fully appreciat[ive of] the

need for a more flexible and responsive personnel management system for the civilian employees

of the Department of Defense," H.R. Conf. Rpt. 108-354, at 759 (Nov. 7, 2003), granted the

Secretary of Defense and the Director of OPM broad authority to waive or modify much of

Title 5 of the U.S. Code and to establish a new "National Security Personnel System," 5 U.S.C.

§ 9902(a).  Section 9902(a) provides that: "Notwithstanding any other provision of this part,[2] the

Secretary may, in regulations prescribed jointly with the Director, establish, and from time to

time adjust, a human resources management system for some or all of the organizational or

functional units of the Department of Defense."  *Id.*  The next section provides extensive

"requirements" for the HR system, including that it be "flexible" and "contemporary" and

include a "pay-for-performance evaluation system."  *See* 5 U.S.C. § 9902(b).  Nowhere in the

system requirements or elsewhere in the statute did Congress require the Agencies to undertake

an individualized review of each employee's relationship to DoD's national security mission or

to exclude employees from the HR system on that basis.

The NDAA sets forth the procedures which the Agencies are to use in collaborating with

---

[2] The term "this part" refers to Part III of Title 5, 5 U.S.C. §§ 2101-9904.

employee representatives regarding the development and implementation of the HR system. *See* 5 U.S.C. § 9902(f).  These procedures "are the exclusive procedures for the participation of employee representatives in the planning, development, implementation, or adjustment of the National Security Personnel System."  5 U.S.C. § 9902(f)(4).

The NDAA also authorizes the Agencies to "establish and from time to time adjust a labor relations system for the Department of Defense."  5 U.S.C. § 9902(m)(1).  Unlike the HR system, the LR system is required "to address the unique role that the Department's civilian workforce plays in supporting the Department's national security mission."  *Id.*  However, the statute does not anticipate any parsing of that workforce, providing that the LR system "shall be binding on all bargaining units within the Department of Defense, all employee representatives of such units, and the Department of Defense and its subcomponents, and shall supercede all other collective bargaining agreements[,] . . . except as otherwise determined by the Secretary."  5 U.S.C. § 9902(m)(8).  The authority to implement the LR system expires in November 2009, six years after the enactment of the NDAA.  5 U.S.C. § 9902(m)(9).

## II.    The National Security Personnel System Regulations

After extensive collaboration with labor unions representing DoD's civilian employees, *see* 70 Fed. Reg. 66116, 66120-23 (Nov. 1, 2005), the Agencies promulgated regulations establishing an HR system and an LR system.  *See* 5 C.F.R. Part 9901.  The HR system includes performance based pay as required by Congress (subpart C), as well as, *inter alia*, a more robust performance management system (subpart D), more efficient hiring authority (*see* subpart E), and a revised adverse action appeals process (subparts G & H).  *See* 70 Fed. Reg. at 66119. Regarding pay, the Secretary is authorized to set various pay schedules which may include one or

-5-

more pay bands.  *See* 5 C.F.R. § 9901.212.  The Secretary has not yet promulgated any schedules that would apply to any of Plaintiffs' members.

Subpart I of the rule (5 C.F.R. §§ 9901.901-9901.928) "implement[s] the provisions in 5 U.S.C. 9902(m) relating to the Department's labor-management relations system."  5 C.F.R. § 9901.901. As the regulations reflect, a major purpose of the LR system is to "address[] the unique role that the Department's civilian workforce plays in supporting the Department's national security mission and promote[] a collaborative issue-based approach to labor management relations."  5 C.F.R. § 9901.901.

The rule provides that "[p]ursuant to the provisions of 5 U.S.C. 9902, all civilian employees of DoD are eligible for coverage under one or more of subparts B through I of this part, except to the extent specifically prohibited by law."  5 C.F.R. § 9901.102(a).  It also states that the Secretary may set the date "for applying [the LR system] to all eligible employees in accordance with 5 U.S.C. 9902(m)."  5 C.F.R. § 9901.102(b)(1).  The Secretary may apply the subparts of the rule implementing the HR system "to a specific category or categories of eligible civilian employees in organizations and functional units of the Department at any time." 5 C.F.R. § 9901.102(b)(2).

The Agencies determined that the overseas school employees are not eligible for the HR system, because their pay is set by 20 U.S.C. § 903, a non-discretionary statutory provision outside of Title 5.  *See* 70 Fed. Reg. at 66131.  The Agencies determined that the domestic school employees are eligible for the HR system because the pay provisions of the HR system do not conflict with 10 U.S.C. § 2164.  *See* 70 Fed. Reg. at 66131.  The Agencies determined that both groups of school employees are eligible for the LR system.

-6-

Thus, to summarize, both the overseas educational personnel and the domestic educational personnel will be included, along with all other bargaining unit employees, within the LR system when that system is made effective.  The overseas educational personnel are not eligible for inclusion in the HR system.  The domestic educational personnel are eligible for inclusion in the HR system, and they are scheduled to be included in "Spiral Two" of the implementation of this system.  *See* 70 Fed. Reg at 66185.

## III.    Procedural History

This case is the second of two challenges that were filed by labor unions against the National Security Personnel System.  The first, filed by a coalition of labor unions not including the FEA, was decided by this Court (*see AFGE v. Rumsfeld*, 422 F. Supp. 2d 16 (2006)) while motions in this case were pending.  Defendants appealed the Court's ruling in *AFGE*, and this Court then entered an Order in this case, denying the pending dispositive motions "without prejudice to refiling upon resolution of the appeal in the lead case, *AFGE v. Rumsfeld* (05-2183)."  Minute Order (Apr. 25, 2006).

On appeal, the D.C. Circuit rejected the *AFGE* plaintiffs contention that the LR system and parts of the HR system were inconsistent with the NDAA, holding, with regard to the LR system that the NDAA "grants DoD expansive authority to curtail collective bargaining through November 2009."  *AFGE v. Gates*, 486 F.3d 1316, 1324 (D.C. Cir. 2007).  The D.C. Circuit thus upheld all of the challenged provisions of the NDAA.  *Id.* at 1331 ("We . . . uphold the DoD regulations at issue in this appeal.").

After the D.C. Circuit's *AFGE* decision, Plaintiff filed a new Motion for Summary Judgment.  On September 17, 2006, the mandate issued from the D.C. Circuit in *AFGE*, and

Defendants now oppose Plaintiff's Motion and move this Court to dismiss Plaintiff's Complaint.

## ARGUMENT

### I.    Standard of Review

Plaintiff's claims are reviewed under the APA and may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. 706(2)(A). The review applicable to Plaintiff's arbitrary and capricious claims is "quite deferential" to the Agencies.  *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (The "arbitrary and capricious" standard applies a "narrow" scope of review, and "a court is not to substitute its judgment for that of the agency."); *Omnipoint Corp. v. FCC*, 78 F.3d 620, 632 (D.C. Cir. 1996) (describing this as a "deferential standard").  The Court "must affirm the agency's decision if a rational basis for it is presented."  *Nat'l Tank Truck Carriers, Inc. v. EPA*, 907 F.2d 177, 182 (D.C. Cir. 1990) (quotation omitted).[3]

Plaintiff's statutory contentions are subject to the well-known standard of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Where, as here, a case involves an agency's construction of the statute that it administers, the Court first inquires "whether Congress has directly spoken to the precise question at issue."  If Congress's intent is clear, "that is the end of the matter," and the Court "must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842-43.  Put another way, the Court must decide "whether the statute unambiguously forbids the Agency's interpretation."  *Barnhart v. Walton*, 535 U.S.

---

[3] Indeed, a reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

212, 218 (2002).  If Congress has not "directly" addressed "the precise question at issue," a court

may not "impose its own construction on the statute."  *Chevron*, 467 U.S. at 843.  Rather, a court

will defer to the agency's interpretation so long as it is "based on a permissible construction of

the statute." *Id.*

II.    **Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR and LR Systems Is Contrary to 10 U.S.C. § 2164 Fails To State a Claim on which Relief May Be Granted**

    A.    **Plaintiff's Contention that Inclusion in the HR System Conflicts with 10 U.S.C. § 2164 Is Not Ripe**

Plaintiff argues that including domestic school employees in the NSPS HR system is

contrary to law, specifically, 10 U.S.C. § 2164(e), the statute under which domestic school

employees are currently appointed.  *See* Compl. ¶ 37.  Section 2164(e) provides the Secretary

with authority to enter agreements to provide for the elementary or secondary education of

dependents of members of the armed forces; and it sets forth various standards to govern these

arrangements, including providing criteria related to pay.  Under § 2164(e), the Secretary is

authorized to fix the compensation of civilian employees working in these schools "without

regard to the provisions of any other law relating to the number, classification or compensation of

employees."  *Id.*  In doing so, however, the statute requires the Secretary to "consider" three

factors:

    (i)    the compensation of comparable employees of the local educational agency in the capital of the State where the military installation is located;

    (ii)    the compensation of comparable employees in the local educational agency that provides public education to students who reside adjacent to the military installation; and

    (iii)    the average compensation for similar positions in not more than three

other local educational agencies in the State in which the military
installation is located.

10 U.S.C. § 2164(e)(3)(A)(i)-(iii).

Plaintiff claims that because 10 U.S.C. § 2164(e) requires the Secretary to account for

these three factors in setting pay for domestic school employees, the inclusion of domestic school

employees in the HR system, which establishes a performance pay system, would violate

10 U.S.C. § 2164(e).  According to Plaintiff, a performance pay system is fundamentally

incompatible with § 2164(e).  This claim is not yet ripe.

As the Supreme Court has explained, "[t]he ripeness doctrine is 'drawn both from Article

III limitations on judicial power and from prudential reasons for refusing to exercise

jurisdiction.'"  *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003)

(quoting in part *Reno v. Catholic Soc. Services, Inc.*, 509 U.S. 43, 57 n.18 (1993) (hereinafter

"*CSS*")).  The ripeness requirement is "designed 'to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'"  *Nat'l Park Hospitality*, 538 U.S. at 807-808 (quoting in part *Abbott

Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967)).  To determine whether administrative

action is ripe for judicial review, the courts "evaluate (1) the fitness of the issues for judicial

decision and (2) the hardship to the parties of withholding court consideration."  *Nat'l Park

Hospitality*, 538 U.S. at 808.  "[A] regulation is not ordinarily considered the type of agency

action 'ripe' for judicial review under the [APA] until the scope of the controversy has been

reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id.* at 808 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

As the Supreme Court explained in *CSS*, promulgation of a regulation may itself affect parties concretely enough to satisfy the ripeness requirement where, for example, a regulation presents the Plaintiffs "with an immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation." 509 U.S. at 57. Conversely, a challenge to a "regulation, the impact of which could not 'be said to be felt immediately by those subject to it in conducting their day-to-day affairs' . . . would not be ripe before the regulation's application to the plaintiffs in some more acute fashion, since 'no irremediabl[y] adverse consequences flow[ed] from requiring a later challenge.'" *Id.* at 58 (*quoting in part Toilet Goods Assn. v. Gardner*, 387 U.S. 158, 164)).

Plaintiff's claims as to the purported conflict between the NSPS HR system and 10 U.S.C. § 2164(e) are not yet ripe because, even if the domestic school employees were moved to the NSPS HR system, which has not yet happened, it is not at all clear what form their pay system would take. While the challenged regulations set forth the general parameters of a performance pay system, *see* 5 C.F.R. § 9901.342-361, the specifics of that system are left to be decided by future implementing issuances. At this time, the specifics of the performance pay system are unknown, and until the specific terms of that system are decided, it is impossible to determine if the system will, in fact, conflict with § 2164(e). There is no immediate consequence facing Plaintiff because no regulation has been determined, and Plaintiff has not alleged that it

-11-

will suffer any hardship if judicial review is delayed until some concrete action is taken.  Any ruling on whether the performance pay system applied to domestic school employees when they are moved into the NSPS HR system would, at this time, rest largely on speculation about the as-of-yet undetermined specifics of a hypothetical performance pay system.  *See Action Alliance for Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986) (claims are unripe "when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it"); *Atlantic States Legal Foundation v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting in part *Texas v. United States*, 523 U.S. 296, 300 (1998)) ("Even purely legal claims may be unfit for review" where they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

### B.    Plaintiff's Contention that Inclusion of the Domestic School Employees in the HR System Conflicts with 10 U.S.C. § 2164 Fails To State a Claim

Even if plaintiff's claim is ripe, this claim lacks merit because the performance pay system could take into account each of 10 U.S.C. § 2164(e)'s factors.  The only requirement imposed by 5 U.S.C. § 9902 is that the NSPS contain "[a] pay-for-performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees."  *Id.*, § 9902(b)(6)(I).  The details of the system are left to the Secretary's discretion.

As Plaintiff's own exhibits recognize, there are many ways to design a performance pay system for educators.  *See* James Stedman & Gail McCallion*, Performance-Based Pay for Teachers*, 1 (Congressional Record Service, 2001) (Appx. to Pl's Mem. at A48-A66) ("There is no single model of performance-based pay plans" for teachers); *id.* at 2 ("Performance-based pay

for teachers is evolving.  Policymakers are considering various alternative approaches that may address shortcomings of previous efforts."); *id.* at 7 ("Performance-based pay for teachers has a long history, particularly in the form of merit-pay which has fallen into and out of favor in public schools repeatedly throughout the 20th century.");[4] *id.* at 15 ("it is important to recognize that there is no single model for such pay plans"); *id.* at 16 ("researchers and policymakers in districts and states are exploring and implementing performance-based pay plans that are intended to address the shortcomings of previous efforts").  Therefore, any performance pay system applied to domestic school employees could adequately consider the § 2164(e) factors in a way that would not conflict with the terms of that statute.  At this time, however, the details of any such performance pay system are unknown, and therefore, there is not yet any conflict with § 2164, and no way in which in to divine whether a conflict will occur in the future.

Furthermore, Plaintiff's argument against inclusion in a performance pay system cannot be that domestic school employees' pay must be set solely through consideration of the § 2164(e) factors, because as Plaintiff admits, domestic school employees' pay is currently set not through § 2164(e) alone, but through collective bargaining.  *See* Pl's Mem. at 39.  The agreements reached through collective bargaining presumably take into account the § 2164(e) factors in much the same way a future performance pay system could.  The Supreme Court examined a very similar situation in *Fort Stewart Schools v. FLRA*, 495 U.S. 641 (1990), finding no inherent conflict

_____

[4] Performance-based pay for teachers appears to be enjoying an upswing in support among teachers, as evidenced by a recent front page New York Times article.  *See* Sam Dillon, *Long Reviled, Merit Pay Gains Among Teachers*, N.Y. Times, A1 (June 18, 2007), 2007 WLNR 11365580 ("For years, the unionized teaching profession opposed few ideas more vehemently than merit pay, but those objections appear to be eroding as school districts in dozens of states experiment with plans that compensate teachers partly based on classroom performance.")

-13-

between setting teachers' pay through collective bargaining and a statute that required the relevant schools' per-pupil expenditures to be equal to that of particular public schools in the states in which they were located. The Court found that there was enough flexibility in the collective bargaining system to account for the statutory requirement, and therefore in that way, collective bargaining and § 2164 could co-exist. *Id.* at 653-57. The same is true of the instant case. There is more than enough flexibility in a performance pay system to account for the § 2164(e) factors.[5]

### C.    Plaintiff's Contention that Inclusion of the Domestic School Employees in the LR System Conflicts with 10 U.S.C. § 2164 Fails To State a Claim

Plaintiff additionally claims that including the domestic school employees in the NSPS LR system is contrary to law because the LR system does not permit bargaining over pay, and § 351(c) of the National Defense Authorization Act for Fiscal Year 1995, codified as a savings provision at 10 U.S.C. § 2164 note (hereinafter referred to as "the savings provision"), "guarantees the right of DoD domestic school personnel to negotiate or bargain collectively with

---

[5] Plaintiff also claims that the NSPS HR system and "the domestic school personnel system are . . . inconsistent because the Secretary and the Director have exempted all employees covered by the HRMS from the reduction-in-force provisions of 5 U.S.C. §§ 3501-3505. However, Congress did not waive the applicability of 5 U.S.C. §§ 3501-3505 when it created the domestic school personnel system in 10 U.S.C. § 2164(e)." Pl's Mem. at 26 (citations omitted). Despite Plaintiff's assertion, there is no conflict here because 10 U.S.C. § 2164 says absolutely nothing about reduction-in-force procedures. Congress, however, did address those provisions in 5 U.S.C. § 9902, granting the Secretary and Director authority to waive those provisions of Title 5 in conjunction with the NSPS HR system by explicitly absenting the reduction-in-force provisions of Title 5 from a list of non-waivable provisions under § 9902. *See* 5 U.S.C. § 9902(d). Just because Congress declined to waive provisions of Title 5 in an earlier statute– or, stated more accurately, declined to mention certain provisions of Title 5 in an earlier statute– does not mean that Congress cannot decide to authorize their waiver in a later statute. And, Congress having done so here, defendants acted within the authority provided them in choosing to waive those provisions of Title 5 in the NSPS regulations. *See* 5 C.F.R. § 9901.602.

the Secretary with respect to wages, hours, and other terms and conditions of employment." Pl's

Mem. at 38 (internal quotation marks and bold omitted); *cf.* Compl. ¶ 40. The § 2164 savings

provision, however, "guarantees" no such right.

By its terms, the only "guarantee" the savings provision makes concerning collective

bargaining is that nothing in § 2164 will override any pre-existing collective bargaining rights

held by domestic school employees at the time of passage of 10 U.S.C. § 2164. Specifically, the

savings provision states:

> *Nothing in section 2164 of title 10, United States Code* [this section], as added by
> subsection (a), shall be construed as affecting the rights in existence on the date of
> the enactment of this Act [Oct. 5, 1994] of an employee of any school established
> under such section (or any other provision of law enacted before the date of
> enactment of this Act that established a similar school) to negotiate or bargain
> collectively with the Secretary with respect to wages, hours, and other terms and
> conditions of employment.

10 U.S.C. § 2164 note (emphasis supplied). Plaintiff reads too broad a guarantee into this

obviously limited language. The savings provision, by its terms, is limited exclusively to § 2164.

It does not, as Plaintiff suggests, create a generalized right to collective bargaining. It provides

only that *Section 2164* should not be read to override pre-existing collective bargaining rights.

The savings provision does not, however, prevent changes made to collective bargaining rights

by any statute or regulation other than § 2164.

Thus, the LR system's exclusion of pay from the topics over which the Secretary may

bargain (*see* 5 C.F.R. § 9901.903) does not conflict with the § 2164 savings provision, because,

as explained, nothing in that provision prevents the limitation of collective bargaining rights by

statutes or regulations other than § 2164. Nor is this a situation, as Plaintiff suggests, of one

statute superceding another. *See* Pl's Mem. at 38. Chapter 9902, which authorized the Secretary

to determine the topics subject to collective bargaining under the NSPS LR system, does not

supercede, or even conflict with, the § 2164 savings provision because the savings provision does

not apply to any law other than § 2164.  The two can co-exist because the NSPS LR's limitation

of collective bargaining over domestic school employees' pay is drawn from 5 U.S.C. § 9902,

not from § 2164.  In this way, the savings provision continues to be effective because "[n]othing

in section 2164 of title 10, United States Code. . . [has been] construed as affecting," 10 U.S.C. §

2164 note, the collective bargaining rights of domestic school employees appointed under 10

U.S.C. § 2164.  "The courts are not at liberty to pick and choose among congressional

enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent

a clearly expressed congressional intention to the contrary, to regard each as effective."

*Morton v. Mancari*, 417 U.S. 535, 551 (1974).

### III.    Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR System while Overseas School Employees Are Excluded Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted

The inclusion of the domestic school employees and exclusion of the overseas school

employees in the HR system is not arbitrary and capricious or an abuse of discretion, because, as

Plaintiff concedes, the two groups are governed by different statutory provisions, which have

different requirements.  Overseas school employees must be hired pursuant to 20 U.S.C. § 903.

*See* 20 U.S.C. § 903(a) ("The Secretary of Defense *shall* conduct the employment and salary

practices . . . in accordance with this chapter." (emphasis supplied)).  That section mandates that

the Secretary "*shall* fix the basic compensation for [overseas school employees] at rates equal to

the average of the range of rates of basic compensation for similar positions of a comparable

level of duties and responsibilities in urban school jurisdictions in the United States of 100,000

or more population." 20 U.S.C. § 903(c) (emphasis supplied). This provision does not provide

the Secretary with discretion, but requires him to set wages of overseas school employees to

equal those of certain stateside equivalents "to the extent reasonably possible." *Overseas

Federation of Teachers v. United States*, 674 F.2d 34, 37 (D.C. Cir. 1982). Because the payment

of overseas school employees is set by a nonwaivable, non-discretionary statute, these employees

are ineligible for the HR system which includes the NSPS pay system. *See* 70 Fed. Reg. at

66131.[6]

By contrast, domestic school employees may be hired under 10 U.S.C. § 2164. *See* 10

U.S.C. § 2164(e)(2) ("The Secretary may . . . appoint individuals to [civilian school] positions.").

Unlike Section 703 (governing overseas school employees), Section 2164 (governing domestic

school employees) requires only that the Secretary consider certain factors in setting pay, and

thus is not incompatible with the NSPS pay system. *See supra* Part II.A. The fact that domestic

and overseas school employees are not similarly situated provides "a rational basis for treating

them differently." *"Complex" Consolidated Edison Co. of N.Y. v. FERC*, 165 F.3d 992, 226

(D.C. Cir. 1999).

In light of the different statutory requirements, Plaintiff's contention that it is arbitrary

and capricious to utilize different systems for setting compensation for domestic and overseas

education personnel is frivolous. Domestic and overseas school employees have long been

treated differently due to the statutory differences. For example, domestic school employees

---

[6] For this same reason, overseas school employees have not been permitted to collectively bargain their basic pay. *Overseas Education Ass'n & United States Dep't of Defense*, 45 FLRA 1185, 1191-92 (1992).

appointed pursuant to Section 2164 have been permitted to collectively bargain compensation while overseas school employees appointed pursuant to Section 903 have been prohibited from collectively bargaining "basic compensation."  *Compare Fort Stewart*, 495 U.S. 641, *with Overseas Education Ass'n & United States Dep't of Defense*, 45 FLRA 1185, 1191-92 (1992).

The Agencies have rationally decided to include all eligible employees in the HR system. Because of the statutes discussed above, the domestic school employees fall within this group, while the overseas school employees do not.  The Agencies' differential treatment of the domestic and overseas school employees is mandated by the different applicable statutes and is not arbitrary, capricious, or an abuse of discretion.

**IV.    Plaintiff's Contention that the Inclusion of Domestic School Employees in the HR System Is Arbitrary and Capricious and an Abuse of Discretion Because of the Domestic School Employees' Relationship to National Security Fails To State a Claim on which Relief May Be Granted**

Plaintiff's argument that inclusion of domestic school employees in the HR system is arbitrary and capricious because domestic school employees purportedly have no national security role (Compl. ¶ 38) is also meritless.  The rule that Plaintiff seeks to craft – that DoD must evaluate the individual relationship that each group of employees has with national security – has no basis in the statute, has been constructed by Plaintiff entirely out of whole cloth, and is counter to the intent of Congress clearly expressed in the statute.  Thus, plaintiff's contention should be rejected.

The NDAA authorizes the Agencies to implement "a human resources management system for *some or all* of the organizational or functional units of the Department of Defense." 5 U.S.C. § 9902(a) (emphasis supplied).  The statute sets forth a number of requirements for the

-18-

HR system.  For example, it must be "flexible" (*id.* § 9902(b)(1)); be "contemporary" (*id.* § 9902(b)(2)); retain certain statutory rights (*id.* § 9902(b)(3)); ensure collective bargaining as provided in the statute (*id.* § 9902(b)(4)); and "include a performance management system" that contains, *inter alia*, a "pay-for-performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees" (*id.* § 9902(b)(6)).  But nowhere in this long list of Congressionally-mandated requirements is there any requirement that DoD undertake an individualized review of its 700,000-person civilian workforce to evaluate the specific connection between national security and each type of employee.  Indeed, there is no hint in this provision that employees should be omitted from the "flexible" and "contemporary" HR system based on their relationship to DoD's national security mission.  To the contrary, Congress authorized the Agencies to include as many as "all" civilian employees in the human resources management system, despite the fact that Congress was undoubtedly aware that the hundreds of thousands of civilian DoD employees – from secretaries, to mailroom workers, to base exchange workers, to lawyers, to janitors – have different roles in supporting DoD as it carries out its national security mission.

Moreover, while the promotion of national security is a major reason for the HR system, and the Agencies have structured the system to promote national security, national security is not the only value served by the HR system.  Improved personnel management is a second important goal of the system.  These dual goals are the reason that Congress mandated that the HR system be promulgated jointly by DoD (possessing national security expertise) and OPM (possessing personnel management expertise).  5 U.S.C. § 9902(a).  As a result, the Agencies have moved away from an "inflexible, one-size-fits-all system of defining work, hiring staff, managing

-19-

people, assessing and rewarding performance, and advancing personnel," 70 Fed. Reg. at 66118,

and developed an "HR management system [that] is a foundation for a leaner, more flexible

support structure and will help attract skilled, talented, and motivated people, while also retaining

and improving the skills of the existing workforce," *id.  See also id.* at  66117 (The Agencies

"prescribe this final regulation to establish a flexible and contemporary system, consistent with

statutory merit system principles and prohibitions against prohibited personnel practices . . . for

managing the Department's human capital."); *id.* at 66118 ("The Department's 20 years of

experience with transformational personnel demonstration projects, covering nearly 30,000 DoD

employees has shown that fundamental change in personnel management has positive results on

individual career growth and opportunities, workforce responsiveness, and innovation.").  In

doing so, DoD has sought to "determine the most appropriate and productive approach to

management of civilian personnel [within] the Department of Defense," H.R. Conf. Rpt. 108-

354, at 759 (Nov. 7, 2003), and craft an HR system with the "greater personnel flexibility" that

Congress intended, H.R. Armed Serv. Committee Report, 108-106 (May 16, 2003).  *See also id.*

(showing Congress' intent to "transform the very management structures and processes of the

Department of Defense"); Remarks by the President at Signing of NDAA, 2003 WL 22766865,

at *3 (Nov. 24, 2003) ("Nearly 700,000 civilian defense workers have been laboring under a

cumbersome, inefficient system designed for another century.").

Finally, it is clearly rational and efficient for DoD to have a single HR system that

encompasses as many civilian employees as possible, as Congress clearly anticipated when it

authorized "a human resource management system" rather than several human resource

management systems.  *See infra* Part V.

-20-

V.    **Plaintiff's Contention that the Inclusion of the Domestic and Overseas School Employees in the NSPS Labor Relations System Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted**

The Agencies have included all bargaining units within DoD (and their labor representatives) in the LR system.  This tracks clearly expressed Congressional intent:

> The labor relations system developed or adjusted under this subsection shall be binding on *all bargaining units* within the Department of Defense, *all employee representatives* of such units, and the Department of Defense and its subcomponents, and shall supercede all other collective bargaining agreements for bargaining units in the Department of Defense, including collective bargaining agreements negotiated with employee representatives at the level of recognition, except as otherwise determined by the Secretary.

5 U.S.C. § 9902(m)(8) (emphases supplied).  This statutory language is controlling, and plaintiff's contrary contention must be rejected.

Plaintiff contends that the school employees' bargaining units should not be among the "all bargaining units" covered by the LR system because the school employees "are not involved in national security operations."  Pl's Mem. at 36; *see also* Compl. ¶ 42.  However, while the school employees may not view themselves as relevant to national security, they are indeed part of the extensive civilian support system that provides crucial services in support of our military men and women. DoD's school employees are part of the "Total Force (military personnel, civilian employees, and contractors) [which] thinks and operates as one cohesive unit."  70 Fed. Reg. at 66117.  These school employees (along with the rest of the civilian workforce) have a "unique role in . . . supporting the Department's national security mission" within the meaning of 5 U.S.C. 9902(m)(1).  As the preamble states, "DOD civilians are unique in government" because they are an "integral part of an organization that has a military function" and because they "must complement and support the military around the world" (60 Fed. Reg. at 66117) and

-21-

"must be an integrated, flexible and responsive part of the team" (*Id.* at 66118).  Specifically,

DoD's educators provide "absolutely critical [contributions] to the successful accomplishment of

the Department's national security mission."  70 Fed. Reg. at 66178.  Indeed, Congress would

not have provided for domestic and overseas schools if it had not determined that there was a

national security related need for them.[7]  This Total Force support system consists of hundreds of

thousands of people from truck drivers to technicians to janitors to attorneys.[8]  It is this entire

support system, and not any part in isolation, that Congress intended to place under the NSPS LR

system.  5 U.S.C. § 9902(m)(1) (authorizing "a labor relations system for the Department of

Defense").

　　　Plaintiff's contrary position would enmesh the Agencies and the Court in myriad claims

by various civilian employees who claim to have a unique situation and/or to be distant from

front line national security operations.[9]  By attempting to conjure a rule that every type of

employee be evaluated individually without regard to the overall support system, Plaintiff

---

[7] Plaintiff's contention that DoD's school employees teach only about 12% of all military dependents is irrelevant.  Pl's Mem. at 37.  Congress has determined that these educators are necessary to teach dependents at certain bases where no adequate local educational option exists.  *See* 10 U.S.C. § 2164(a) (Secretary may set up schools domestically where "appropriate educational programs are not available through a local educational agency"); 20 U.S.C. § 901 (authorizing teachers for schools outside the United States).   The education of these military dependent children is critical regardless of whether there are other children at other bases whose education can be provided by local public schools.

[8] Indeed, in *AFGE*, 486 F.3d 1316, the D.C. Circuit upheld the inclusion in the LR system of so-called NAFI employees, who were described in their unions' brief as "provid[ing] services such as childcare, food service, post exchanges and other activities."  2006 WL 2881634, at *29; *see also* infra, Part VI.

[9] *See, e.g.*, 70 Fed. Reg. at 66131 (addressing comments that lawyers and law enforcement officers be excluded from NSPS "because of the nature of their work"); *id.* at 66178 (addressing comments that civilian mariners should be excluded from the LR system).

attempts to pull the thread that will unravel the tapestry. Such a rule would lead to near-endless bureaucratic work and litigation, and would leave DoD with a patchwork of differing labor relations systems that would not be conducive to national security or employee cohesiveness, and would not be consistent with Congress' desire for a single LR system covering "all bargaining units." 5 U.S.C. § 9902(m)(8); *cf. Nationsbank of Texas, N.A. v. United States*, 269 F.3d 1332, 1337 (Fed. Cir. 2001) (imposition of uniformity is a sufficient "rational purpose" to support agency action). It is not arbitrary and capricious or an abuse of discretion for DoD to follow Congress' clearly expressed intent and to implement a workable, uniform LR system.

## VI. Plaintiff's Contention that Treating Plaintiff's Bargaining Unit Members Identically to All Other Bargaining Units Employees Is Arbitrary and Capricious and an Abuse of Discretion Fails To State a Claim on which Relief May Be Granted

Plaintiff's final argument is that even if school employees are properly included in the LR system (which they are), the domestic school employees should have a special exception from the general prohibition on collective bargaining of pay (a prohibition that is mandated for the vast majority of DoD employees by 5 U.S.C. § 9902(m)(7)'s directive that the LR system not expand the scope of bargaining). Compl. ¶ 43; Pl's Mem. at 39. To exempt Plaintiff's members from this key provision of the LR system would defeat the intent of 5 U.S.C. § 9902(f) as well as Congress' interest in DoD maintaining a single, uniform LR system, as discussed above. Even more pertinently, Plaintiff's contention here is squarely foreclosed by the D.C. Circuit's decision in *AFGE*.

The *AFGE* plaintiffs made exactly the same argument on behalf of employees of non-appropriated fund instrumentalities ("NAFIs"). The *AFGE* plaintiffs argued that–

> NSPS did not ensure collective bargaining for employees of non-appropriated

fund instrumentalities ("NAFIs"), which are organizations that provide services such as childcare, food service, post exchanges and other activities. The [NSPS] regulations prohibit negotiations over any pay program established under the NSPS. 5 C.F.R. § 9901.305. NAFI employees, however, have historically negotiated over their pay and benefits under Chapter 71. *See Fort Stewart Schs.* [*v. FLRA*, 495 U.S. 641, 649 (1990)]. The ability to negotiate over pay is based upon the fact that compensation for NAFI employees is not specifically provided by statute . . . . *Id.*

Brief for Appellees, *AFGE v. Rumsfeld*, 2006 WL 2881634, at *29-*30 (Sept. 26, 2006); *see also*

*AFGE*, 486 F.3d at 1321 (listing this argument as one of the plaintiffs' four challenges to the

collective bargaining provisions of the NSPS (all of which were ultimately rejected by the

court)).

The NAFI employees were thus in precisely the same situation as the domestic school

employees here. They were service workers who had previously had the right to collectively

bargain pay pursuant to Chapter 71 and *Fort Stewart Schools* (the precise case cited by Plaintiff

for the domestic school employees' right to collectively bargain pay), and who were foreclosed

from bargaining pay pursuant to the generally applicable NSPS rule. The D.C. Circuit squarely

rejected the NAFI employees' contention that their right to collectively bargain pay could not be

taken away by the LR system, holding that DoD had "broad authority . . . to supersede collective

bargaining through November 2009." *AFGE*, 486 F.3d at 1326; *accord id.* ("In sum, we hold

that the plain language of the National Defense Authorization Act authorizes DoD to curtail

collective bargaining for DoD's civilian employees through November 2009.").

Plaintiff implicitly acknowledges the controlling nature of *AFGE* by relying on that

opinion's *dissent*. *See* Pl's Mem. at 39 (quoting Judge Tatel's dissenting opinion). The

governing law, however, is the *majority opinion* in *AFGE*, and that opinion squarely forecloses

the argument made by Plaintiff here.  Plaintiff has not, and cannot, offer any basis for

distinguishing *AFGE*, and thus its argument must suffer the same fate as that of the NAFI

employees.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment should be denied,

defendants' motion to dismiss should be granted, and this action should be dismissed with

prejudice.

Dated:  October 2, 2007                      Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             JEFFREY A. TAYLOR
                                             United States Attorney

                                              */s/ Jeffrey M. Smith*
                                             SUSAN K. RUDY, D.C. Bar # 369112
                                             JEFFREY M. SMITH, D.C. Bar # 467936
                                             JONATHAN ZIMMERMAN, MA Bar # 654255
                                             Attorneys, U.S. Department of Justice
                                             20 Massachusetts Avenue, N.W., Room 7144
                                             Washington, D.C.  20530
                                             Telephone:  (202) 514-5751
                                             Attorneys for Defendants